UNITED STATES of America

v.

Johanna HINES, a/k/a Robert Hines.

UNITED STATES of America

v.

Daniel D. TAVARES.

Crim. Nos. 91–10298–K, 91–10278–Y.

United States District Court,
D. Massachusetts.

Aug. 24, 1992.

Assistant U.S. Attys. A. Clayton Spencer and Michael J. Pelgro, Boston, Mass., for plaintiff.

Charles P. McGinty, Asst. Federal Public Defender, Boston, Mass., for Hines, Cr. No. 91–10298–K.

Owen Walker, Federal Public Defender, Boston, Mass., for Tavares, Cr. No. 91–10278–Y.

## SENTENCING MEMORANDUM

FUSTE, District Judge.

On August 4, 1992, we had occasion to sentence Mr. Johanna Hines and Mr. Daniel Tavares, defendants in two jury trials held in May 1992 in the District of Massachusetts. The two cases involved indictments for violation to 18 U.S.C. § 922(g)(1), felon in possession of a firearm. After guilty verdicts, presentence reports were prepared by the Probation Officer and, as a result, the court was prepared to sentence both defendants under the Armed Career Criminal ("ACC") dispositions of 18 U.S.C. § 924(e)(1). Certain state court convictions seemed to provide the basis for enhanced incarceration penalties.

Objections to the presentence reports were duly entered by the Federal Public Defender of the District. The objections were aimed at invalidating the state convictions as underlying offenses for the application of the enhanced penalties of the ACC configuration. United States Sentencing Guidelines section 4B1.4 requires that a convicted felon in possession of a firearm, 18 U.S.C. § 922(g)(1), serve an enhanced sentence if that defendant has at least three prior convictions for a violent felony or serious drug offense, or both, committed on occasions different from one another.

At the time of the sentencing of defendant Johanna Hines, Crim. No. 91–10298–K, the government took the position that one of the defendant's three previous convictions did not qualify as an 18 U.S.C. § 924(e)(1) predicate offense. Even though the ACC status was not triggered, the government argued that the three convictions were to be counted for Criminal History Category purposes. The defendant's position was that certain constitutional infirmities nullified the three convictions and invalidated them both for purposes of ACC, 18 U.S.C. § 924(e)(1), and Criminal History Category determination. See 18 U.S.C. § 3553(a)(2) and USSG §§ 4A1.1 to 4A1.3.

In the case of Daniel Tavares, Crim. No. 91–1078–Y, the government took the position that the seven prior convictions served as predicate offenses for penalty enhancement. The defendant argued both that some of the convictions were for non-violent crimes and that the court should not be allowed to make such determination by referring to certain sources proscribed under *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and *United States v. Harris*, 964 F.2d 1234 (1st Cir.1992). In addition, it was argued that at least three cases, referred to as "guilty-filed" cases, did not qualify as convictions.

After hearing argument on the applicability of recent First Circuit case law, *United States v. Robert Paleo*, 967 F.2d 7 (1st Cir.1992); *United States v. Payne*, 966 F.2d 4 (1st Cir.1992); *United States v. Gerald Harris*, 964 F.2d 1234 (1st Cir.1992); and, after considering our independent interpretation of Massachusetts law, we declared the prior convictions valid and sentenced the defendants accordingly. In the case of Hines, the prior convictions were only counted for Criminal History Category purposes. No ACC enhancement was imposed. In the case of Tavares, the seven predicate offenses suggested by the presentence report were counted. An enhanced ACC sentence was imposed.

### I.

#### *Massachusetts' Two–Tier System*

This is not the first time that the Massachusetts two-tier system for criminal cases in district courts and the Boston Municipal Court have been the object of constitutional attack. The Supreme Court of the United States, in *Ludwig v. Massachusetts*, 427

U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976), declared the two-tier system constitutional and not violative of an accused's fourth-amendment right to a trial by jury.[1] *See also Justices of the Boston Municipal Court v. Lydon,* 466 U.S. 294, 296, 104 S.Ct. 1805, 1807, 80 L.Ed.2d 311 (1984).

The Supreme Judicial Court of Massachusetts, in *Commonwealth v. Duquette,* 386 Mass. 834, 438 N.E.2d 334 (1982), gives a good explanation of the two-tier system as it exists today. After the 1979 court reorganization, a felony defendant facing imprisonment of not more than five years is entitled to a trial by a first-tier District Court jury in the first instance. Alternatively, at the first tier, a defendant may waive his right to a first instance jury trial and elect a bench trial by a judge of the District Court or the Boston Municipal Court. If convicted, he may then appeal to the District Court jury of six session, where he will be tried *de novo* by a jury unless he once again waives a jury trial and elects to have a second *de novo* bench trial by a second judge.

When a defendant first appears before the first tier of the District Court, several alternatives are available to him. A trial may take place with or without a jury. The defendant may decide to enter a formal plea of guilty, such as we know them in federal court, and put an end to his case, or he may follow either of two unique alternatives known as "continuance without a finding" or "admission to sufficient facts." If the defendant obtains from the court a continuance without a finding, the case is continued for a lengthy period of time. No finding of guilt is made and some conditions are imposed, such as restitution. At the end of the period, if the court is satisfied that the harm done has been corrected by restitution or otherwise, the court may dismiss the case and no conviction results.

An "admission to sufficient facts" to find defendant guilty may also be pursued. An admission to sufficient facts is not a guilty plea or a nolo contendere. "Admission to sufficient facts," although technically not a plea, is a procedure mostly utilized in jury-waived sessions (first tier) of the District Court. A defendant, after having initially pled not guilty at arraignment, changes his mind, admits to sufficient facts, may be found guilty and sentenced, but preserves the right to request a *de novo* trial at the second tier or jury of six session of the District Court. *See* Kent B. Smith, *Mass. Crim.Prac. & Proc.* § 1202 (1983).

What is the purpose of the summary disposition procedure under admission to sufficient facts? In a great number of cases, this simple procedure puts an end to the dispute between the Commonwealth and a defendant. The admission is entered and a disposition is made by the court. The defendant is allowed to test his case, perhaps get it dismissed or obtain an acquittal, or obtain a satisfactory or advantageous disposition, or simply curtail the first jury proceeding and go to the jury of six session. He preserves his right to a *de novo* trial. The procedure is used by defense attorneys and defendants in order to ascertain the penalty or to try to obtain a continuance with or without a finding and then decide whether to have a *de novo* jury trial. Smith, *supra,* § 1202. The system is quite advantageous to a defendant. If the first disposition is not acceptable, since he has not entered a formal guilty plea, he gets a second opportunity to test the government's case.

The Supreme Judicial Court, in *Duquette,* establishes the parameters of the validity of an admission to sufficient facts in the first tier and in the jury of six session. *Duquette,* 438 N.E.2d at 339–43. At the first tier of the District Court system, admissions to sufficient facts are treated informally, provided the defendant has first made a valid written waiver of his right to an immediate jury trial. Once the jury trial is waived, he could choose to admit to sufficient facts and be sentenced. The important point is that the defendant can still appeal to the jury of six session and obtain a trial *de novo.* As *Duquette*

---

1. The *Ludwig* decision was followed by a 1979 reorganization of the two-tier system. *See Commonwealth v. Duquette,* 386 Mass. 834, 438 N.E.2d 334 (1982).

points out at page 342, at this first level any theoretical problems arising from the admission, whether of a constitutional or statutory nature, are wiped out by the appeal for a trial *de novo*. The defendant's remedy for any perceived unfairness in result and sentence is to appeal to the jury of six session and obtain a new trial.

An admission to sufficient facts in the second tier or the jury of six session, whether bench or jury trial, is treated differently. Formality replaces the informality of the first tier practice because the jury of six session represents a defendant's last opportunity for a trial. At this level, an admission to sufficient facts is much like a guilty plea. Here it is important that the defendant fully understand the impact that an admission to sufficient facts will have on his rights. The finality of a conviction at this second level requires that the following be complied with:

1) The defendant should sign the written waiver of trial by jury required by law and the judge should make the inquiries required by *Ciummei v. Commonwealth*, 378 Mass. 504, 392 N.E.2d 1186 (Mass.1979).

2) The facts admitted to should be formalized in written stipulations to be filed with the papers of the case.

3) The judge should be satisfied that there is a factual basis for the finding of guilty.

4) The judge should make certain that the defendant knows that by admitting to sufficient facts he is waiving his rights to confront and cross-examine witnesses against him, and the right to call witnesses.

5) The judge should make certain that the defendant understands that by admitting to sufficient facts he is, for all purposes, pleading guilty at this second tier and that his *Boykin* rights are gone forever (the right to trial, the right to confrontation, and the privilege against self-incrimination). *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct.

1709, 23 L.Ed.2d 274 (1969). Mass. R.Crim.P. 12, the equivalent of Fed. R.Crim.P. 11, must be followed.

There are other variables that may have to be accounted for. For example, if a judge in the first tier requests that a defendant waive his right to jury trial at the second tier as a condition for obtaining a continuance without a finding, then the first tier proceedings are treated as having the finality associated with the second tier. The safeguards for admissions at the jury of six session would apply to such case in the first tier. *Duquette*, 438 N.E.2d at 343. Also, if a defendant admits to sufficient facts in the first tier and is expected not to claim an appeal or waives his right to appeal, then he must be warned of his right to appeal and of the consequences, such as deportation in the case of an alien. *Commonwealth v. Mahadeo*, 397 Mass. 314, 491 N.E.2d 601 (1986); *Commonwealth v. Mele*, 20 Mass.App.Ct. 958, 480 N.E.2d 647 (1985). In Massachusetts, under a rule of the district court a defendant may be notified of the particulars of his right to appeal by the session clerk. It is not necessary that the warnings be given by a judge. Supp. Rules of Criminal Procedure, District Court, Rule 7. *See* Smith, *supra*, § 1999.

■ We find that a conviction by admission to sufficient facts resulting from informal proceedings at the first tier of the District Court is valid in federal court for the purpose of sentence enhancement under 18 U.S.C. § 924(e), even though a full-blown jury waiver or change of plea colloquy as known to us in federal court under Fed.R.Crim.P. 11 and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), has not taken place.[2] As long as the right to trial by jury was waived in writing, and as long as the facts admitted to are sufficient to find a defendant guilty, the conviction is valid. Notice of the right to appeal should be given. There should be some reasonable assurance that if no right to appeal is claimed, the defendant is noti-

**2.** *See* Mass.R.Crim.P. 12(a)(3). The rule specifically contemplates "admission to sufficient facts" as one alternative to a plea of guilty or nolo contendere. He who elects to admit to sufficient facts, especially in the first tier, has not elected to plead guilty as such, even though the final result, the conclusion of his case, may accrue.

fied of the loss of his right to appeal. *Commonwealth v. Duquette,* 386 Mass. 834, 438 N.E.2d 334 (1982); *Commonwealth v. Mahadeo,* 397 Mass. 314, 491 N.E.2d 601 (1986); and *Commonwealth v. Mele,* 20 Mass.App.Ct. 958, 480 N.E.2d 647 (1985). The availability of a new trial at the second tier or jury of six session cures any constitutional defect.

Under these circumstances, we cannot accept defendant's invitation to invalidate informal first-tier jury-waived and admission to sufficient facts convictions for failure to comply with every detail of a full-blown District Court, jury of six or superior court change-of-plea procedure. *See* Fed.R.Crim.P. 11 or Mass.R.Crim.P. 12. *See also* Smith, *supra,* § 1191. The system was designed to be informal and if we review the resulting convictions under formal standards, then it would be difficult, if not impossible, to count such convictions for federal guideline sentencing purposes. If we accept the Federal Public Defender's point of view, the result would accrue a double benefit to those who admit to sufficient facts. First, they dispose of their state court criminal case, most probably on very beneficial terms. Second, the conviction cannot ever be counted as a predicate offense for Armed Career Criminal status or a Criminal History Category conviction under a federal guideline sentence. This we are not prepared to sanction.

Before passing upon the specifics of both Mr. Hines and Mr. Tavares' convictions, a word must be said about *United States v. Paleo,* 967 F.2d 7 (1st Cir.1992).

*Paleo* allows a collateral attack on prior convictions directly in federal court at the time of sentencing. Defendants need not first exhaust state remedies. *Paleo* also holds that federal courts should assume that a state conviction is valid unless proven constitutionally infirm. Should the defendant wish to challenge the validity of a past state conviction, he must explain the constitutional defect and convince the sentencing court that the conviction was indeed obtained in violation of the federal Constitution. *Paleo,* 967 F.2d at 13. The *Paleo* court left open for decision by the sentencing court what kinds of constitutional infirmities make a past conviction null and void in the sentencing context, when a constitutional error is harmless, when a defendant has waived a constitutional objection, and when, or to what extent, a federal court must accept some other court's determination of these matters. *Paleo,* 967 F.2d at 13.

On the basis of these principles, we first examine Johanna Hines' convictions for Criminal History Category purposes, followed by those affecting Daniel Tavares for Armed Career Criminal status.

## II.

### Johanna Hines

Johanna Hines' Presentence Report (PSR) identifies, under Part B, *Criminal History Category,* three convictions at the Boston Municipal Court that give him a Criminal History Category of III. The first conviction, appearing at ¶ 28 of the PSR, relates to an arrest on April 23, 1988 and a charge of assault with dangerous weapon and assault and battery with dangerous weapon. Defendant was found guilty as to one of two counts upon a stipulation of facts leading to an admission to sufficient facts on May 10, 1988 and was sentenced to probation until May 10, 1989. The records in evidence show that his probation was terminated and the defendant was discharged as originally planned.

The defendant was represented by counsel. The details developed by the probation officer reveal that on April 23, 1988, a Boston police officer responded to a report by a civilian that a man was waving a knife in the park near Tremont Street. Upon their arrival, the police were met by Joseph Cabral, who described the subject as a black man wearing an Army jacket. Cabral added that the suspect was waving the knife at small children and other bystanders. The police located the subject on Shawmut Avenue, and four-inch buck knife was in his right hand. The police ordered the defendant to drop the knife; he refused and threatened the officers. The police called for assistance after the defendant

kicked Boston police officer Nolan in the head.

Defendant Hines claims that this conviction is constitutionally infirm because in actuality he pled guilty without being given a Mass.R.Crim.P. 12 colloquy or being advised as to the three *Boykin* rights to confront and cross-examine evidence, to silence against self-incrimination, and to trial by jury with the assistance of counsel. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). In addition, the defendant claims that there was no warning about the range of possible punishment and that, therefore, he was not fully aware of the direct consequences of his plea. *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). As a third ground, Hines claims that the record fails to show that the proceedings were knowing and intelligent, especially since two weeks earlier, on April 25, 1988, the defendant had appeared in court and had been committed for observation to the Bridgewater State Hospital.[3] Lastly, the defendant claims that the admission to sufficient facts (he insists on calling it a guilty plea) was defective and that the defendant never admitted that he committed a crime and that there was no factual basis for the plea. Numerous violations of the Massachusetts Rules of Criminal Procedure are pointed out by defendant's counsel, such as failure to adequately take his jury trial waiver or plea of guilty colloquy.

The defendant failed to produce any evidence other than the limited court record, consisting of the docket sheet, the criminal complaint, the police report, the appearance of counsel, and what appears to be a partial transcript of proceedings for May 10, 1988. The court has no evidence before it as to the defendant's actual knowledge of rights waived and definitely no evidence of incompetence on that particular occasion.

The record does show, and the docket sheet and other documents so confirm, that on April 25, 1988 the defendant pled not guilty and was sent for psychiatric evaluation to be completed before May 10, 1988. The record also shows that on May 10, 1988, before his admission to sufficient facts appearance before Judge Pino, the defendant waived his right to an initial jury trial before the first tier of the Boston Municipal Court. The particulars of the waiver are not known, inasmuch as the transcript for that part of the proceedings, if it exists, was not produced.[4] The record also shows that the parties elected to dispose of the case by a stipulation of admission to sufficient facts and that, because of the stipulation, no witness was called to support the factual basis of the admission. The parties stipulated to the police report. The testimony of one of the victims, Mr. Cabral, was available to be presented in court. The docket sheet confirms that the probation sentence imposed was extremely beneficial to Mr. Hines. The docket sheet also confirms that the defendant was notified of his right to appeal. There is an entry in the docket sheet to this effect under the date May 10, 1988 (NRA, or "notified right to appeal"). *See also* Transcript of the Hearing at page 8. *See also* Affidavit of Robert J. Kelley, Courtroom Procedures Clerk, Boston Municipal Court, received in evidence without objection.[5]

---

**3.** The defendant does not claim, however, that he was mentally incompetent to admit to sufficient facts. Had this been the case, the matter could have been easily established at the sentencing proceedings by subpoenaing Hines' psychiatric files and by presenting expert testimony.

**4.** Under the statute, the defendant may waive the jury when he pleads at arraignment or later and before the jury is empaneled to try him. Mass.Gen.L. ch. 263, § 6; Mass.R.Crim.P. 19(a). In Massachusetts, there is no constitutional requirement that the colloquy be conducted on the record. Only sound judicial administration so requires. *Commonwealth v. Abreu,* 391 Mass. 777, 463 N.E.2d 1184 (1984).

**5.** Under Massachusetts practice, all that is required is notification by the judge or the session clerk of the right to appeal to the jury session, an admonishment that defendant is giving up his right to a jury trial if he does not appeal, and reasonable time within which to exercise his right to appeal. *See* Mass.Gen.L. ch. 278, § 18; Mass.R.Crim.P. 28(c), and Smith, *supra,* at § 1999. We emphasize that Hines has made no showing through a formal court record that he was not informed of his right to appeal.

██ We cannot find this first-tier, Boston Municipal Court conviction constitutionally infirm. The defendant does not dispute that this is his conviction or that if valid, it qualifies for purposes of Criminal History Category. We looked into the police reports and records developed by the probation officer to determine the character of the charge against the defendant, *United States v. Harris*, 964 F.2d 1234 (1st Cir.1992). Under *Commonwealth v. Duquette*, 386 Mass. 834, 438 N.E.2d 334 (1982), an admission to sufficient facts in the jury-waived or first-tier session of the lower court system, only requires the obtention of the written waiver by the defendant of his right to trial by jury, the admission as such, a factual basis for the same, and the notification of the right to appeal. All these requirements were met. We have also found evidence that the defendant and his attorney consulted with each other before he agreed to stipulate the police report in lieu of his admission to sufficient facts. Moreover, the record contains a statement by the defendant admitting to the facts and to the incident.[6] Under all these circumstances, the defendant cannot seriously argue that procedural defects rendered the May 10, 1988 conviction ineligible for consideration in computing defendant's criminal history score.

Quoting from *Duquette*,

At the first tier of the District Court system, admissions to sufficient facts may be treated more informally, provided, of course, that the defendant has first made a valid written waiver of his right to an immediate jury trial.... Once the defendant has waived a jury trial, he could choose to admit to sufficient facts as a step in obtaining a continuance without a finding of his case.... Thus, at this first level, any theoretical problems, whether of a constitutional or statutory nature, that are suggested by

the entry of a finding of guilty based on an admission to sufficient facts are wiped out by the appeal for trial de novo. The defendant's remedy for any perceived unfairness in this procedure is to appeal to the jury of six session and obtain a new trial.

438 N.E.2d at 342–43.

██ The second conviction set out in the PSR, at ¶ 29, relates to an arrest that took place on December 4, 1988, for assault and battery on a police officer, assault and battery with dangerous weapon, and disorderly conduct before the Boston Municipal Court. The defendant was represented by counsel. On December 5, 1988, the defendant was committed for a thirty-day psychiatric evaluation and on February 1, 1989, he was found guilty upon an admission to sufficient facts and was committed to Solomon Carter Fuller. On October 25, 1989, the defendant was released under his own recognizance and was discharged on December 8, 1989. The details of the offense developed by the probation officer show that on December 4, 1988, the defendant was arrested in the vicinity of Harrison Avenue, after being involved in an argument and after having threatened the victim with a bottle.

With respect to the February 1, 1989 assault and battery conviction, the defendant's admission to sufficient facts occurred in the jury-waived primary session of the Boston Municipal Court. The record shows that he waived his right to a jury trial. The docket sheet indicates such waiver.[7] Although the defendant did not produce a transcript of court proceedings on the issue of competency,[8] the docket sheet again permits the inference that such finding was made. The defendant first appeared in the case on December 5, 1988 and was sent for a competency evaluation. He returned to court on December 23, 1988 and again he was found incompetent to

---

**6.** The fact that Hines did not know that his conduct constituted a specific crime is of no consequence here. One can commit an offense and be guilty of its commission without knowing that the criminal code proscribes that particular conduct. Ignorance of the law is no excuse in *malum in se* crimes.

**7.** *See* footnote 4 at page 565.

**8.** Hearings of December 5, 1988, December 23, 1988, and January 23, 1989; hearing on competency on or around February 1, 1989, and appearances of October 25 and December 8, 1989.

stand trial and ordered to be further evaluated and to appear for a hearing on January 23, 1989. On January 23, 1989, the defendant once again appeared in court and was ordered for a further competency hearing on February 1, 1989. On February 1, 1989, the defendant once again appeared before the court. The docketing of the various orders for evaluation allow us to infer that the defendant was competent to stand trial on February 1, 1989, at which time he admitted to sufficient facts. As a matter of fact, the court heard testimony on the factual basis of the plea. The docket sheet shows an entry under the date February 1, 1989 to the effect that the defendant was notified of his right to appeal (NRA).[9] After being discharged when probation was terminated on December 8, 1989, the defendant did not present any challenge to his conviction. As in the case of the first conviction, the defendant has produced no transcript of the other court appearances that are listed in the docket sheet and on the basis of the documents received in evidence alone we cannot say that the defendant met his burden of convincing us that his conviction should be considered invalid. *Paleo*, 967 F.2d at 13.

■ The last conviction counted by the probation officer as part of the Criminal History Category appears listed at ¶ 32 of the PSR. The same refers to an arrest occurring on November 20, 1990, for possession with intent to distribute crack cocaine. The proceedings were also held before the Boston Municipal Court. The defendant was found guilty on May 1, 1991 in the context of an admission to sufficient facts and was sentenced to ninety days at the House of Corrections. The docket sheet shows that the defendant was notified of his right to appeal. An appeal was taken before the Boston Municipal Court jury session, where the defendant was scheduled for a new trial on May 15, 1991, which was continued to August 13, 1991.

On August 9, 1991, Hines was arrested on the present federal charge for violation of 18 U.S.C. § 922(g). His appeal to the jury of six session of the Boston Municipal Court was still pending. On August 13, 1991, Hines defaulted in the jury of six, claiming that he had overslept and his conviction and ninety-day sentence were reinstated.[10]

The defendant claims that the last conviction is as deficient as the previous two and should not be considered for sentencing purposes. Here we note, however, that the defendant has offered no evidence whatsoever to counter the fact of a valid conviction which is evidenced by the government's introduction of a certified copy of the same. *See Paleo*, 967 F.2d at 13. On the contrary, the government's Exhibit 3 shows that on May 1, 1991, the defendant waived his right to initial jury trial at the first level of the Boston Municipal Court. The record also reflects that after having been found guilty upon an admission to sufficient facts, an NRA annotation was made in the docket to substantiate that he was notified of his right to appeal, a right he indeed exercised. Based on a base offense level of 12 and a Criminal History Category of III, the guideline imprisonment range was 15 to 21 months, with a supervised release term of three to five years and a fine range from $17,500 to $175,000. The court sentenced the defendant to 21 months, no fine, and a three-year period of supervised release. Had we counted the three convictions for purposes of ACC status, the guideline range would have been 188 to 235 months. If no prior convictions were counted, his base offense level would have been 12, with a Criminal History Category of I, and a guideline imprisonment range of 10 to 16 months.

### III.

#### *Daniel Tavares*

■ Paragraph 89 of Tavares' PSR lists seven cases said to qualify as violent felo-

---

9. *See* footnote 5 at page 565.

10. Since this third conviction did not enter until August 13, 1991, four days after Hines' arrest in the instant case, his third conviction for violent or drug crimes was not technically in effect at

the time of the felon-firearm federal crime. For this reason, the government conceded that Hines did not have the three convictions required by 18 U.S.C. § 924(e) at the time he committed the present offense for purposes of an ACC enhancement.

nies and, therefore, available for enhancement purposes under 18 U.S.C. § 924(e). At the time of sentence, the defendant admitted that the second conviction is indeed valid for all purposes. This particular conviction entailed a December 8, 1985 assault and battery, two counts, and unarmed robbery, Barnstable Superior Court. As to the six remaining convictions, the defendant's position is that convictions 1, 3, 4, and 7 were not for violent felonies and that convictions 5, 6, and 7 are only "guilty-filed" convictions which do not count for ACC purposes because they are not convictions under Massachusetts law.[11]

Regarding convictions 1, 3, 4, and 7, appearing at ¶¶ 53, 58, 59, and 66 of the PSR, the argument made is to the effect that *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), mandates that we find that these four convictions were for non-violent assault and battery. Assault and battery under Massachusetts law (Mass.Gen.L. ch. 265, § 13A), covers two distinct crimes, one violent for ACC purposes, and one non-violent for ACC purposes. Defendant claims that under *Taylor,* to determine whether a defendant was convicted for the violent or the non-violent modality of assault and battery the court is blindfolded and may look only to the indictment or information and jury instructions, and not to the facts underlying the prior convictions. The government's position is that under *United States v. Harris,* 964 F.2d 1234 (1st Cir.1992), interpreting *Taylor,* there are certain other court documents (besides the indictment or information and the jury instructions) that can be used to determine whether or not a Massachusetts assault and battery conviction is of the violent or non-violent modality.

In *Harris,* the First Circuit addressed a situation very similar to the one now before us, that is, it considered Massachusetts assault and battery convictions in which there are no jury instructions and in which the charging documents only contained scanty sacramental language adopted from the statute and, therefore, language not useful in determining the specific modality of the crime. In *Harris,* the defendant made an argument similar to the one advanced here—that the sentencing court could not count the offenses for 18 U.S.C. § 924(e)(1) purposes, since the specific documents mentioned in *Taylor* (indictment or information and jury instructions) shed no light on the specifics of the crime. 964 F.2d at 1235–1236. The First Circuit rejected such an argument and held that *Taylor,* if read literally, would impede a conviction obtained by a guilty plea from being counted for ACC purposes. *Harris* decides that the Supreme Court never intended such an absurdity. 964 F.2d at 1236. The circuit court stated that the example given in *Taylor,* the consideration of the charging document or the jury instructions, merely represented one of the many ways in which a sentencing court could determine the particular crime involved in a prior conviction and that there are other alternatives available to make such determination.

In *Harris,* the court looked to the description of the offenses contained in the PSR and concluded that the prior convictions were of the physically-harmful or potentially physically-harmful variety (violent modality) and were not "consensual touching" crimes (non-violent modality). 964 F.2d at 1236–1237.[12] The defendant reads *Taylor* as limiting a sentencing court in its review of past convictions to the formal charging document and the jury instructions and argues that *Harris* went beyond the limit established by the Supreme Court. We read both *Taylor* and *Harris* as being consistent one with the other. Our reading of *Harris* allows the sentencing court to consider the current PSR and see if from the information developed by the probation officer it can be determined whether the assault and battery conviction was of the violent or non-violent type. As we read both *Taylor* and *Harris,* in the context of a

---

**11.** *See* USSG § 4A1.2(a)(4), App. N.1.

**12.** *See* J.R. Nolan and B.R. Henry, *Criminal Law,* 32 Mass. Practice § 325 (2d ed. 1988 & 1991 Supp.). Under Massachusetts law, a battery is the "intentional and unjustified use of force, however slight, upon the person of another." Nolan & Henry, *supra,* § 322.

situation like the one we now face, there is nothing wrong with the probation officer looking into other supporting documents, such as police records, state presentence reports, and/or official descriptions of the criminal conduct, in determining the violent or non-violent character of a given action by defendant. After considering the current PSR and the descriptions it contains, we treated convictions 1, 3, 4, and 7 as violent felonies under the sentence enhancement statute.

Conviction No. 1, PSR ¶ 53, entailed an original probation sentence and counseling for "self-control", later revoked with a 2½-year incarceration sentence at the House of Corrections. On November 2, 1985, Daniel Tavares, along with two other accomplices, broke into a dwelling in Marston Mills, Massachusetts, the home of the Lindstrom family. The defendants were armed with 2 × 4 clubs which had nails in them. The dwelling was occupied by Teri Lindstrom, Mark Meketsky, and Steven Boynton. A fifth occupant, Andrea Lindstrom, was outside taking a walk at the time of the break-in. Upon entry, Tavares hit Meketsky on the back of his head, on the left part of his face, and on the wrist with his 2 × 4 club. Tavares then dropped the club and began punching Meketsky in the face, causing his nose to bleed. He then began choking him until he was almost unconscious. Thereafter, Meketsky was attacked by another accomplice. Meketsky was later observed by the police to have bruises and lumps on his face and head, the result of the attack; said injuries required medical attention at a hospital. Boynton, meanwhile, was punched twice in the face by another accomplice. Prior to the attack, Teri Lindstrom escaped from the residence and went to a neighbor's house to call the police.

Following the attack on the male occupants, Tavares ran outside to look for Andrea Lindstrom. Tavares chased Ms. Lindstrom with a club in his hand, caught her, and began slapping her face. He then started choking her, pushed her to the ground, pulled her up off the ground by her hair and pulled her by her hair to her house. Upon reaching the house, Tavares pushed her inside, ordered her into the bedroom and, with a "crutch" in his hand, told Ms. Lindstrom she was lucky he didn't kill her. He then swung the crutch at her, just missing her head. Ms. Lindstrom was later observed by the police to have swelling and bruises on her face and neck; she was treated at a hospital for the injuries sustained during the attack.

Tavares left the room, advising Ms. Lindstrom not to move. By this time, police had arrived at the residence. Tavares ordered Boynton to shut off all the lights and to show him the "back way" out of the house. Boynton showed him the exit in the basement. Tavares and his two accomplices then returned upstairs at which time Tavares instructed Boynton to go outside and tell the police that he and his girlfriend were having a fight and that everything was alright. Following Boynton's exit, Tavares and one accomplice attempted to escape via the basement door, at which time they were arrested by Barnstable police officers.

Conviction No. 3, PSR ¶ 58, earned the defendant a seven-day commitment and credit for time served. Details of the offense revealed that on August 14, 1986, while on routine patrol, the Barnstable police witnessed the defendant in the West End of Hyannis attacking the victim, Paul J. Diorio. Tavares had Diorio on the ground and kicked him several times in the head. The police approached Tavares, at which time he fled on foot and was apprehended and arrested a short time later.

Conviction No. 4, PSR ¶ 59, resulted in a six-month incarceration at the House of Corrections concurrent with a previous sentence being served. The probation officer's investigation revealed that on October 20, 1986, the Harwich Police Department was notified of a disturbance occurring at Cape Cod Technical High School. Shortly after a school football game, Daniel Tavares struck James Moore from behind. A fight then ensued between Tavares and Moore's brother, Daniel. A teacher, Michael Tierney, broke up the fight and separated the two subjects. At that point, Tavares' accomplice jumped on Daniel Moore

and a second fight was underway. Another teacher, Robert Campbell, broke up this fight with the aid of several teachers who were present. The teachers then escorted Tavares and two accomplices to their vehicle during which time all three yelled obscenities and threats to the teachers. James Moore later advised the police that he overheard threats being made that Tavares and his two accomplices planned to return to the school the following morning with fifteen or sixteen others to "beat up the white (either kids or people)." Campbell and Tierney advised the police that the three perpetrators have had "no trespassing" orders issued against them by the school administration, but they continued to return to the school property.

Conviction No. 7, PSR ¶ 66, resulted in defendant being found "guilty-filed". The probation officer's investigation revealed that on November 24, 1987, Daniel Tavares was seen by an employee at Downtown Liquors in Hyannis, Massachusetts placing two bottles of vodka into his pants. He was approached by another employee, Scott Buris, and when confronted he opened his coat, removed the bottles from his pants and attempted to leave the store. A scuffle ensued and Buris was struck in the abdomen by Tavares. During the altercation, several bottles of liquor were broken. Buris was able to restrain Tavares until the police arrived. Police instructed both Buris and Tavares to stand up, at which time Tavares turned to Buris, brought his hands to a fighting position and stated, "I'll get you for punching me." Tavares was then placed under arrest for shoplifting and disorderly conduct. Scott Buris later filed charges on the assault and battery.[13] Undoubtedly, these four convictions involved violent assault and battery.

It is clear from this brief analysis that a sentencing court, contrary to what the defendant advocates, may consider many different types of reliable information in making an assessment like the one in issue here. Other circuits have adopted a similar approach. See United States v. Sweeten, 933 F.2d 765, 769–70 (9th Cir.1991) (holding it to be an error for a district court to restrict its consideration to the judgment of conviction and the statute "if also presented with the documentation or judiciary noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes"). See also United States v. Strahl, 958 F.2d 980, 983–84 (10th Cir.1992); United States v. Garza, 921 F.2d 59, 60–61 (5th Cir.1991). See 18 U.S.C. § 3661; USSG § 1B1.4; United States v. Wilkinson, 926 F.2d 22, 28 (1st Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991); and United States v. Lewis, 910 F.2d 1367, 1373 (7th Cir.1990). Wilkinson stands for the proposition that at sentencing hearings facts must be established by evidence that is simply reliable. Without doubt, a sentencing court may conduct broad inquiries and may rely on a wide range of information at the time of sentencing. United States v. Kimball, 741 F.2d 471, 474–75 (1st Cir. 1984).

The government correctly points to other circumstances surrounding convictions 1, 3, 4, and 7 that corroborate that they were entered for the violent modality of assault and battery. In case No. 1, PSR ¶ 53, the court's record states that Tavares was originally charged with armed assault in a dwelling. In case No. 3, PSR ¶ 58, the court records make clear that Tavares was convicted of assault and battery by means of a dangerous weapon. Tavares was kicking his victim in the head with his foot. Under Massachusetts law, a "shod" foot is a dangerous weapon when used to kick somebody. See Commonwealth v. Davis, 10 Mass.App.Ct. 190, 406 N.E.2d 417, 419–23 (1980); J.R. Nolan and B.R. Henry, Criminal Law, 32 Mass. Practice § 325 (2d ed. 1988 & 1991 Supp.). In case No. 4, PSR ¶ 59, Tavares was sentenced to six months in the House of Corrections. In case No. 7, PSR ¶ 66, Tavares' case was placed on file,

---

**13.** See United States v. Payne, 966 F.2d 4 (1st Cir.1992). In Payne, the First Circuit interpreted Taylor and Harris as requiring that where a statute defines more than one crime, a sentencing court may look to sources other than the indictment or information and jury instructions to determine which crime was in fact in issue.

but he was sentenced on the same date, in the same court, to two years in the House of corrections. As the government correctly points out, these sentences involved punishment for physically-harmful violent conduct and not for an "unconsented touching" crime.

█ Lastly, we have noted that the defendant, who had the burden of proof to convince us that his crimes were non-violent, failed to produce any evidence that would allow us to give him the benefit of the doubt. *See Paleo,* 967 F.2d at 13.

Tavares next claims that convictions 5, 6, and 7, appearing at paragraphs 62, 63, and 66 of the PSR, are cases "placed on file" and not convictions under Massachusetts law. The defendant understands that such "placed-on-file" cases do not count as predicate offenses for purposes of ACC enhancement.

The defendant concedes that under 18 U.S.C. § 921(a)(20), the question of whether a proceeding entailed conviction is to be determined by the law of the state in which the proceedings were held. Massachusetts law establishes the rule of law as to whether his "guilty-filed" cases are convictions.

At the time of sentencing, we decided not to accept the defendant's argument that such cases are not convictions under Massachusetts law. "Guilty-filed" dispositions are not "a way of interrupting the proceedings." *See* Defendant's Sentencing Memorandum, at p. 5. They are formal, criminal proceedings in which there is an admission of guilt or a finding of guilty in open court. They are, for all purposes, a judicial determination of guilt. These criminal convictions are different from cases that are "filed without a change of plea" or "continued without a finding." *See* p. 4 above. "Guilty-filed" cases are not cases *nolle prosequi* by the government. As convictions under Massachusetts law, they count as convictions under the sentencing guidelines. *See* USSG § 4A1.2(a)(4) and (f), and App. N. 1 and 9.[14]

█ Massachusetts law recognizes a distinction between a "conviction" and a "judgment". For a conviction to be such, there is no need for a judgment or the imposition of a specific penalty. Under Massachusetts law, a person can be convicted and, for a number of reasons, his case can be "filed". This results in a guilty-filed conviction with no specific imposition of, for example, a one-year incarceration sentence. Under Massachusetts law, a "conviction" is an adjudication of guilt either by way of the entry of a formal guilty plea or an admission to sufficient facts or after a finding of guilt by jury verdict. The "judgment" is the sentence which the court may elect to impose after the state has moved for sentence pursuant to Mass.Gen.L. ch. 279, § 3A. As the government correctly points out, the statutory sentencing dispositions enacted by the Massachusetts Legislature in chapter 279, "Judgment and Execution," recognize this distinction. Massachusetts law recognizes that when a defendant is "convicted" before a court and sentenced to imprisonment or sentenced to a fine and imprisonment, the court may suspend execution of either or both. Mass.Gen.L. ch. 279, §§ 1 and 1A. The law also provides that the court shall impose sentence "upon conviction of a crime" pending appeal unless the sentence is stayed pending appeal. Mass.Gen.L. ch. 279, § 4.[15]

Both the defendant and the government cite the Massachusetts landmark decision of *Commonwealth v. Lockwood,* 109 Mass. 323 (1872), in support of their contentions for and against the counting of Tavares' "guilty-filed" convictions. Our independent examination of the *Lockwood* case seems to confirm that Mr. Tavares' guilty-filed cases are convictions under Massachusetts law. *See e.g.,* Opinion of the Justices, 301 Mass. 615, 621, 17 N.E.2d 906 (1938); *Wardell v. Director of the Division of*

14. Only convictions carrying diversionary dispositions from the judicial process without a finding of guilt are not counted.

15. General Laws ch. 278, § 18, as amended, St.1978, ch. 478, § 302, permits a defendant convicted in district court jury waived session to appeal either from a sentence or from a finding of guilty where no sentence is imposed.

*Employment Security,* 397 Mass. 433, 436, 491 N.E.2d 1057 (1986); *Commonwealth v. LeRoy,* 376 Mass. 243, 245 and n. 1, 380 N.E.2d 128 (1978) (construing Mass.Gen.L. ch. 90, §§ 24(1)(b) and 24(1)(d), which provide that a person is "convicted" for drunk driving or operating a vehicle under the influence of alcohol for purposes of suspension of his driver's license where he has pleaded guilty or has been found guilty with a sentence or if his case was placed on file).

This approach has been followed by federal courts in the First Circuit. In *Pino v. Nicolls,* 119 F.Supp. 122 (D.Mass.), *aff'd,* 215 F.2d 237 (1st Cir.1954), an immigration case, the court was confronted by the question of whether a Massachusetts state case in which a defendant was adjudicated guilty of a misdemeanor larceny offense and his case was "placed on file," constituted a "prior conviction" for federal purposes. In holding that the "guilty-filed" case was a conviction, the circuit court stated:

> Placing the case on file was not equivalent to a revocation of the judicial determination of Pino's guilt.... The action of placing the case on file only meant that for the time being the [state court] was satisfied that the interests of justice did not require the imposition of a prison term upon Pino for the offense of which he stood convicted.... Though theoretically it may be possible for the [state court] at some time in the future to take the case from the files and make a final disposition of it, if we take account of the ordinary modes of procedure in the local courts it must be concluded that there is every probability that, once a case is placed on file, it will remain in that status undisturbed and probably forgotten.

215 F.2d at 245.

As is evident from a reading of both *Pino* decisions, there is a distinction to be made between a "conviction" and a "judgment" under Massachusetts practice. A "guilty-filed" case may not be appealed, and, for this reason, a defendant must con-

sent to such a disposition.[16] The reason why such disposition is not appealable is because the practice of not imposing a sentence after an adjudication of guilt may be, by reason of extenuating circumstances or other sufficient causes, beneficial to the defendant. *See Commonwealth v. John Dowdican's Bail,* 115 Mass. 133, 136 (1874). Moreover, the law in Massachusetts is that felony cases placed on file after an adjudication of guilt are convictions that may be used to impeach a defendant who testifies. *See* Mass.Gen.L. ch. 233, § 21 (2nd ¶) ("a plea or a finding or verdict of guilty constitute a conviction within the meaning of this section"); *Commonwealth v. Niziolek,* 380 Mass. 513, 404 N.E.2d 643, 653 (1980).

Tavares makes reference in his sentencing memorandum to other District of Massachusetts dispositions which seem to have adopted a contrary view. As a matter of fact, defendant's memorandum, at page 7, states as follows:

> Two Massachusetts federal district judges, both intimately familiar with Massachusetts procedure, have ruled that Massachusetts "guilty-filed" cases are not convictions—specifically, that if a case is filed after a finding of guilty[,] there is no "judgment of conviction" under the career offender guidelines. *United States v. Timothy Clark,* Criminal No. 89–263–K (April 10, 1990, Keeton, J.); *United States v. Kenneth Edge,* Criminal No. 90–10017–S (December 20, 1991, Skinner, J.).

To our surprise, upon requesting from the Clerk of Court a copy of the published or unpublished opinions by Judges Keeton and Skinner for us to examine, we found that no such published or unpublished opinions exist. All that the Clerk could produce from the official court files were form memorandums of sentencing hearings and reports of statements of reasons which do not address the issue defendant claims they addressed. Furthermore, there are no transcripts of the sentencing hearings available. The court now expresses its dis-

---

**16.** Tavares did not testify at the sentencing hearing. His conclusory affidavit, prepared for his signature by counsel, cannot be accepted by this court as evidence to the contrary.

pleasure at counsel's attempt to have us rely on non-existent material.

In sum, we now reiterate our decision to count Tavares' guilty-filed convictions as predicate convictions for purposes of ACC enhancement.

██ Tavares next claims that his prior convictions are constitutionally defective. Citing *United States v. Paleo*, 967 F.2d 7 (1st Cir.1992), he asserts that case No. 3, PSR ¶ 58, a conviction for assault and battery by means of a dangerous weapon, is invalid because there was no colloquy concerning his right to appeal to the jury of six session. Tavares has filed an affidavit where he states that as best as he can recollect from memory, he admitted to sufficient facts, but he does not recall the judge engaging in a post-conviction colloquy. Tavares has also filed an affidavit by his state court attorney, William W. Robinson, to the effect that it is the practice of state court judges not to engage in such colloquy as a matter of routine.

Tavares has failed to sustain his burden of proof as required by *Paleo*. The state court records indicate that the defendant went to trial on January 12, 1987, before a judge in the first tier of the district court, that he was represented by counsel, and that he executed a written waiver of his right to claim a jury trial in the first instance. The records further indicate that he was found guilty,[17] that he received a sentence of seven days in the House of Corrections with credit for time served, and that he chose not to appeal the conviction or the sentence to the jury of six session. Tavares has made no credible showing that he was not informed of his right to appeal or that ineffective assistance of counsel

intervened with his right to appeal. No court record has been produced that would assist us in making a determination to the contrary. As a matter of fact, under Massachusetts law, all that is required is notification by the judge or the session clerk of the right to appeal to the jury session. If a session clerk advised him of his right to appeal, such information would not appear in a transcript of proceedings before a judge. *See* Mass.Gen.L. ch. 278, § 18; Mass.R.Crim.P. 28(c); and Smith, *supra*, § 1999.[18]

Tavares' other claims as to cases 5, 6, and 7 were also rejected by us. Cases 5 and 7 were admissions to sufficient facts that were placed on file, while case No. 6 was a conviction after trial. Tavares has presented no credible evidence to support the proposition that his statutory right of appeal was unconstitutionally infringed. Tavares does not claim that his admissions were not made knowingly and voluntarily or that there was no evidence to support his conviction. His only claim is that his statutory appellate rights were not adequately explained to him. We find that it is unlikely that such a defect, if it occurred, would serve to invalidate the conviction for federal sentencing purposes.

Tavares' last claim is to the effect that if he is found to be an armed career criminal, it is unconstitutional for the U.S. Sentencing Commission to increase his Criminal History Category from V to VI. No authorities are cited in support of this argument and, therefore, we are not prepared to entertain the same. It is a known fact that guideline sentencing has been found to be constitutional. Previous guidelines similar to the armed career criminal guidelines

17. This was not a case of admission to sufficient facts.

18. At the time of the sentencing hearing, counsel for defendant seemed to adopt the earlier argument made by his office in the Johanna Hines case on a variety of constitutional violations resulting from Tavares' proceedings before a district court. In this respect, our rulings in the case of Johanna Hines govern here. *Commonwealth v. Duquette*, 386 Mass. 834, 438 N.E.2d 334 (1982), and its progeny, are of no help to Tavares, inasmuch as he did not admit to sufficient facts. He was found guilty after a

trial. As stated before, under Massachusetts practice all that is required is notification by the judge or the session clerk of the right to appeal to the jury session, an admonishment that defendant is giving up his right to a jury trial if he does not appeal, and reasonable time within which to exercise his right to appeal. *See* Mass. Gen.L. ch. 278, § 18; Mass.R.Crim.P. 28(c), and Smith, *supra*, at § 1999. We emphasize that Tavares has made no showing through a formal court record that he was not informed of his right to appeal.

have been found constitutional. *See United States v. Green*, 902 F.2d 1311, 1313 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 353, 112 L.Ed.2d 316 (1990), and *United States v. Hayden*, 898 F.2d 966, 967 (5th Cir.1990).

▪ Based on a base offense level of 34 and a Criminal History Category of VI, USSG §§ 4B1.4(b)(3)(A) and 4B1.4(c)(2), the guideline imprisonment range suggested by the Sentencing Commission tables was 262 to 327 months, with a fine range of $10,000 to $100,000, and supervised release ranging from three to five years. The court sentenced the defendant to 240 months, no fine, and five years of supervised release. The downward departure from 262 to 327 months to 240 months was based on USSG § 4A1.3(e) (defendants' Criminal History Category significantly over-represents the seriousness of a defendant's criminal history). We are of the opinion that defendant's present age of 24, along with the fact that his seven convictions occurred while he was seventeen to nineteen years of age (not ordinarily relevant, USSG § 5H1.1), and coupled with the stiff BOL and criminal history enhancements under USSG §§ 4B1.4(b)(3)(A) and 4B1.4(c)(2), make a sentence of 240 months more than adequate for this case. The government, although not conceding the point, gave us the distinct impression that our liberal analysis was correct and, above all, fair. *E.g., United States v. Coe*, 891 F.2d 405, 412–13 (2d Cir.1989).

### IV.

#### The Collateral Attack and Paleo

▪ In *Paleo*, the First Circuit left open the decision of when a constitutional objection to a state conviction has been waived for purposes of collateral attack in the context of a federal guidelines sentence. We now decide that the objections to state convictions presented here were waived. *Paleo* stands for the proposition that state exhaustion is not a prerequisite, but waiver can occur. When, as here, the facts or the defects were known to the defendant and his counsel at the time of conviction, the enforcement of waiver principles is not contrary to *Paleo*'s rule of law, especially when the sentence or disposition has been served or is extinguished and the defendant is no longer in custody.

Habeas corpus law requires the earliest possible resolution of potential constitutional issues. Both Massachusetts and federal law respect this rule. The Massachusetts Rules of Criminal Procedure provide that any defendant may bring a post-conviction motion for new trial under Mass.R.Crim.P. 30. However, the defendant's access to a new trial is limited, and "[t]his limitation on the availability ... [is] consistent with Federal limitations on the availability of the writ of habeas corpus and other methods of collateral attack on a criminal conviction." *Commonwealth of Massachusetts v. Lupo*, 394 Mass. 644, 476 N.E.2d 963 (Mass.1985). In the case of both a Rule 30 motion and a petition under the federal state habeas corpus statute, 28 U.S.C. § 2254, a defendant has waived the right to raise any issue which could have been raised on appeal. *Rose v. Lundy*, 455 U.S. 509, 513–21, 102 S.Ct. 1198, 1200–05, 71 L.Ed.2d 379 (1982); *Tart v. Commonwealth of Massachusetts*, 949 F.2d 490, 494 (1st Cir.1991); *Commonwealth v. McLaughlin*, 364 Mass. 211, 229, 303 N.E.2d 338, 350 (Mass.1973). The Massachusetts legal system applies this rule to avoid "piecemeal litigation ... whose only purpose is to vex, harass, or delay." Reporter's Notes to Mass.R.Crim.P. 30(c)(2). If the defendants had a problem with the constitutionality of the Massachusetts' tiered system, they had ample opportunity to bring that objection in a state court appeal. If they failed to appeal, those objections were waived. This has nothing to do with comity, but rather with time-honored considerations of judicial efficiency.

A Rule 30 motion for new trial, as well as a section 2254 petition, may not be brought by a defendant who has finished serving his sentence. "Under Rule 30 only an individual who 'is imprisoned or restrained of his liberty pursuant to a criminal conviction' may file a motion for post-conviction relief." *Commonwealth v. Lupo*, 394 Mass. at 646 n. 2, 476 N.E.2d at 965 n. 2 (citing *Commonwealth v. Ward*,

15 Mass.App.Ct. 388, 390 n. 2, 445 N.E.2d 1094 (1983)). Under section 2254, according to the language of the statute the defendant must be "in custody" to be entitled to bring a petition. The Supreme Court has stated that "[w]e have never held ... that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." *Maleng v. Cook,* 490 U.S. 488, 491, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989). In *Maleng,* the Supreme Court, although declining to rule on the issue of whether a defendant may assert the invalidity of a former conviction to attack his sentence, found that the language of section 2254 is read so as to preclude an individual who has served his sentence from attacking that sentence in a habeas proceeding. The First Circuit, in *Paleo,* directs us to consider the habeas analogy. *Paleo,* 967 F.2d at 13. The reasons for limiting the ability to attack a conviction only to individuals in custody are similar to those of Rule 30 discussed above. It is in the interest of the system to resolve constitutional infirmities while the record still allows the court to make a reasonable decision. The fact that no post-conviction remedy remains available to the defendant in state court or under 28 U.S.C. § 2254 is itself a potent argument that the defendant should not be able to attack the constitutionality of proceedings he never questioned before his present guideline sentence ACC enhancement predicament.

IT IS SO ORDERED.