**UNITED STATES of America,**

v.

**Frederick HARDY, Defendant.**

Cr. No. 91–10180–K.

United States District Court, D. Massachusetts.

Aug. 10, 1993.

**480**

Stanley Greenidge, Fed. Defender Office, Boston, MA, for defendant.

Michael J. Pelgro, U.S. Attys. Office, Crim. Major Crimes Div., Boston, MA, for U.S.

## MEMORANDUM AND ORDER

KEETON, District Judge.

### I. Introduction.*

On November 14, 1991, defendant was found guilty of two violations of 18 U.S.C. § 922(g)(1) (convicted felon in possession of a firearm and ammunition) and one violation of 26 U.S.C. § 5861(d) (possession of an unregistered firearm).

On January 23, 1992, the court conducted a sentencing hearing. The United States Probation Department, in its Presentence Report ("PSR"), concluded that defendant qualified for an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Under the ACCA, a defendant with three previous convictions for "a violent felony or a serious drug offense, or both" receives a mandatory minimum term of imprisonment of 15 years. 18 U.S.C. § 924(e)(1). The Department of Probation's recommendation was based on three "violent felony" convictions and one "serious drug offense" conviction. The convictions were:

1. A 1985 conviction for assault and battery with a dangerous weapon (a shod foot) on Heavenly Mitchell. (The "1985 conviction.")

2. A 1987 conviction for assault and battery on Heavenly Mitchell and Leila Ray. (The "1987 conviction.")

3. A 1989 conviction for assault and battery on Kenneth Tanguay—a police officer. (The "1989 conviction.")

4. A 1991 conviction for possession of a Class B controlled substance with intent to distribute. (The "1991 conviction.")

Under the ACCA enhancement, the Probation Department concluded that the applicable sentencing range was 262–327 months. After hearing, the court sentenced defendant to 262 months incarceration followed by 60 months supervised release.

Defendant appealed his sentence. On August 13, 1992, this court, taking the view that the appeal had not necessarily terminated this court's jurisdiction and responsibility, under First Circuit precedent, to consider defendant's motion to reconsider his sentencing, allowed the motion and set a schedule for further submissions.

On November 5, 1992, the First Circuit retained jurisdiction over the appeal but remanded the case "for further proceedings in view of *United States v. Paleo*, 967 F.2d 7 (1st Cir.1992)." (Docket No. 108). *Paleo* was decided several months after the original sentencing hearing.

Defendant contends that application of the section 924(e) sentencing enhancement was inappropriate. In support of this contention, defendant challenges the constitutionality of each of the four state court convictions listed above. In addition, defendant contends that the 1987 conviction cannot be considered a *"violent* felony" conviction, 18 U.S.C. § 924(e) (emphasis added), on the ground that the court records do not demonstrate that the conviction was for a violent (as opposed to a nonviolent) assault and battery.

### II. Review of the Constitutionality of Defendant's Past Convictions.

#### A. *Paleo.*

In *Paleo*, the First Circuit reviewed a district court's refusal to consider three past convictions for purposes of sentence enhancement under section 924(e) on the ground that those convictions were not constitutionally obtained. The district court determined that two convictions resulted from guilty pleas that were "the product" of inadequate colloquies and another conviction included constitutionally infirm resentencing proceedings. 967 F.2d at 11; 738 F.Supp. 611 (D.Mass. 1990). As a result, the district court deter-

---

* Now before the court are (1) defendant Frederick Hardy's sentencing memorandum with attached exhibits (Docket No. 107, filed October 23, 1992), (2) the government's sentencing memorandum with the affidavits of James Buckley and Daniel Campbell (Docket Nos. 110–12, filed December 31, 1992), (3) defendant's objections to sentencing (Docket No. 117, filed May 25, 1993), and (4) defendant's comments on the court's draft Memorandum and Order (Docket No. 118, filed May 26, 1993).

mined that the defendant in *Paleo* did not qualify for an ACCA enhancement. The government appealed the sentence. The court held that "a defendant may challenge, in a federal sentencing proceeding, the constitutionality of past convictions, offered to increase the length of a present sentence." 967 F.2d at 13.

In *Paleo,* the court did not base its decision on any *constitutional* right to challenge past state convictions in a federal sentencing hearing. Rather, the court interpreted the *statute* (ACCA) as permitting, in a federal sentencing hearing, a challenge to the use of an allegedly constitutionally infirm state conviction as a factor in a federal sentencing decision.

> See *Paleo,* 967 F.2d at 14 (Memorandum and Order denying petition for rehearing), *withdrawn and issuing new Memorandum and Order to same effect,* No. 90–1774, Order of the Court and Memorandum and Order (Sept. 14, 1992). *See also United States v. Isaacs,* No. 92–2068, slip op. at 10–16 [1993 WL 210537] (June 22, 1993) (constitution requires sentencing court to entertain challenges only to past convictions that are constitutionally infirm on their face).

Accordingly, to the extent that the parties rely on cases decided in a context other than statutory interpretation of section 924(e), those cases are of limited assistance in resolving the issues in the present case.

> See *Paleo,* 967 F.2d at 14 (distinguishing interpretation of the sentencing guidelines, U.S.S.G. § 4A1.2, from interpretation of section 924(e)). *Compare United States v. Tucker,* 404 U.S. 443, 447–49, 92 S.Ct. 589, 591–93, 30 L.Ed.2d 592 (1972) (defendant may raise constitutional challenge to past conviction, based on violation of right to counsel, used to enhance sentence); *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) *with Lewis v. United States,* 445 U.S. 55, 63–65, 100 S.Ct. 915, 919–21, 63 L.Ed.2d 198 (1980) (defendant may not raise constitutional challenge to past conviction, based on violation of right to counsel, used as predicate conviction for charge of being a felon in possession of a firearm).

In *Paleo,* the court specifically stated the procedure and burden of proof for a constitutional attack on a past conviction to be used for enhancement under the ACCA.

> Should the defendant wish to challenge the validity of a past conviction [evidenced by a certified copy of a court record of conviction, or a presentence report's account of a past conviction, that does not on its face demonstrate the unconstitutionality of the conviction], he must say that he wishes to do so, explain the constitutional defect, and convince the sentencing court that the conviction was indeed obtained in violation of the federal Constitution.

967 F.2d at 13.

Though explaining this requirement of proof, the court did not undertake in *Paleo* to decide other issues bearing on the use of previous convictions in federal sentencing proceedings. Rather, the court observed that

> [i]t may become necessary to decide, for example, what kinds of constitutional infirmity make a past conviction unusable in the sentencing context, when a constitutional error is harmless, when a defendant has waived a constitutional objection, and when (or to what extent) a federal sentencing court must accept some other court's determination of these matters.

*Id.* The court also declared that

> [i]n answering such questions, the habeas analogy may ... prove helpful, for similar issues arise in federal habeas corpus proceedings. It may well be the case (although we need not, and do not, now hold) that (with the exception of exhaustion requirements) the answers courts have found satisfactory in the habeas context will also prove satisfactory in this one.

*Id.*

### B. Standard of review for defendant's constitutional challenges.

For each of his convictions, defendant challenges the procedures in the Massachusetts courts by which he waived constitutional rights. Before considering each of his convictions, I first turn to an overview of the

standard for reviewing his waiver of constitutional rights.

### 1. Federal constitutional requirements.

In *Paleo*, the court addressed only constitutional attacks based on the federal Constitution. *See Paleo*, 967 F.2d at 13 (defendant must "convince the sentencing court that the conviction was indeed obtained in violation of the federal Constitution"). Defendant cites no authority, state or federal, directly ruling on permissibility under section 924(e) of disregarding a previous state conviction of record (that is, one that has not actually been set aside by a state court) on grounds other than violation of federal constitutional rights. In attacking his past convictions, defendant here relies primarily on Massachusetts case law. Accordingly, the cases cited by defendant are useful only by analogy and for their persuasive value and not as precedent binding on this court in relation to federal constitutional rights.

■ Under the federal Constitution, a guilty plea is valid only if it is "intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). *See also Parke v. Raley*, —— U.S. ——, ——, 113 S.Ct. 517, 520, 121 L.Ed.2d 391 (1992). For a plea to be voluntary and intelligent,

> it must be "an intentional relinquishment or abandonment of a known right or privilege." Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.

*McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). A plea does not meet this standard if the defendant either (1) does not "understand the nature of the constitutional protections that he is waiving," or (2) "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 n. 13, 49 L.Ed.2d 108 (1976).

The law governing whether a plea is intelligent and voluntary is federal law. *See Brewer v. Williams*, 430 U.S. 387, 403–404, 97 S.Ct. 1232, 1241–1242, 51 L.Ed.2d 424 (1977); *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712 ("The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards."). *See also Neyland v. Blackburn*, 785 F.2d 1283, 1289 (5th Cir. 1986), *cert. denied*, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986).

■ In pleading guilty, a defendant waives three federal constitutional rights: (1) the privilege against self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. *Boykin*, 395 U.S. at 243, 89 S.Ct. at 1712. In *Boykin*, the Supreme Court held that "[w]e cannot presume a waiver of these three important federal rights from a silent record." Accordingly, a court taking a guilty plea must

> canvas[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences. When the judge discharges that function, he leaves a record adequate for any review that may be later sought.

*Id.* at 243–44, 89 S.Ct. at 1712. *See also Brady v. United States*, 397 U.S. 742, 747–48 n. 4, 90 S.Ct. 1463, 1468–69 n. 4, 25 L.Ed.2d 747 (1970) (the requirement of an "intelligent and voluntary" plea has been long recognized; *Boykin* added the requirement that the record affirmatively disclose that the defendant entered his plea "understandingly and voluntarily").

The *Boykin* holding may be described either as a "no-presumption-of-validity-from-silent-record rule" or as a "presumption-of-invalidity-from-silent-record rule." It has the effect of placing the burden on the government to produce a record (or, perhaps, evidence that a record was made, even if now unavailable) affirmatively establishing the knowing and voluntary waiver of constitutional rights.

### 2. Collateral review under section 924(e) of waiver of constitutional rights.

Some later opinions may be interpreted as saying that, under *Paleo*, the decision wheth-

er to review collaterally the constitutionality of past convictions lies in the federal sentencing court's discretion (rather than saying that *when* reviewing collaterally, the court may exercise discretion).

> See *U.S. v. Bell*, 988 F.2d 247, 251 n. 3 (1st Cir.1993) (Selya, J.) (describing *Paleo* as "a case dealing with a district court's discretion to deal with collateral attacks on prior convictions at sentencing"); *U.S. v. Hines*, 802 F.Supp. 559, 564 (D.Mass.1992) (Fuste, J.) (*Paleo* left to the sentencing court the decision regarding what kinds of constitutional infirmity make a conviction null under section 924(e)).

In *Paleo*, the court observed, however, that "the federal government has no recognizable interest in imprisoning a defendant on the basis of convictions that are constitutionally invalid." 967 F.2d at 12. Permitting the trial court (in an exercise of discretion) to refuse to consider a potentially valid constitutional attack on a past conviction would be inconsistent with the reasoning of *Paleo* because it would permit the trial court to "imprison[ ] a defendant on the basis of convictions that are constitutionally invalid." *Id.*

In any event, the government has not argued that this court has discretion not to engage in collateral review in the circumstances of this case. Rather, the government argues that the past convictions survive the constitutional attack. Accordingly, I proceed to review the past convictions.

The government contends that to prevent consideration of defendant's past convictions, for purposes of sentencing under section 924(e), defendant must prove that the waiver of his constitutional rights was not intelligent and voluntary—independently of what the judge said to defendant, on the record, concerning those rights. In other words, the government argues that in this case (in which there is no suggestion of impermissible coercion, mental defect, etc.) defendant must prove that he was *actually* unaware of, or did not understand, the constitutional rights he was waiving. Defendant contends, in contrast, that if defendant proves that the judge failed to enumerate his rights or ask questions sufficient to determine whether or not the waiver was knowing and voluntary, this

alone is sufficient to render those convictions invalid for consideration under section 924(e).

To support his contention, defendant cites *Parke v. Raley*, —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). In that case, the Supreme Court reviewed a challenge to a state court's sentence under the state's recidivism statute. The sentence was based on past convictions that the petitioner contended were obtained in violation of *Boykin*. The Supreme Court held that the *Boykin* no-presumption-from-silent-record rule (under which the state must produce a record affirmatively establishing the knowing and voluntary waiver of constitutional rights) does not apply when a past conviction is attacked during sentencing under a state's recidivism statute. The Court reasoned that

> *Boykin* involved direct review of a conviction allegedly based upon an uninformed guilty plea. Respondent, however, never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding. To import *Boykin*'s presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights. *Johnson v. Zerbst*, 304 U.S. 458, 464, 468 [58 S.Ct. 1019, 1023, 1024–25, 82 L.Ed. 1461] (1938).

—— U.S. at ——, 113 S.Ct. at 523. This holding in *Parke* may be described as the "*Parke* presumption-of-regularity rule."

Although *Parke* did not involve a recidivism proceeding under section 924(e), *Parke* did consider application of federal constitutional requirements under *Boykin* on collateral review of a conviction used in a recidivism determination. As *Paleo* also concerns federal constitutional attacks on past convictions, *see* discussion *supra*, I conclude that the First Circuit would apply the principles of *Parke* in determining whether a past conviction qualifies under section 924(e).

Unfortunately, the opinion in *Parke* is susceptible to two different interpretations,

leading to two very different inquiries when reviewing constitutionality of a past conviction.

### a. Waiver-plus requirement.

One might interpret *Parke* as standing for a procedural ruling establishing a waiver-plus requirement that the sentencing court must apply in determining whether to use a past conviction in a current sentencing proceeding. *Parke* concerned current use of a past conviction in relation to sentencing under a state recidivism statute. If the waiver-plus interpretation of *Parke* were extended to current use of a past state court conviction in a federal sentencing proceeding, it would mean that, to preclude the government from using a past state conviction in determining a criminal history for federal sentencing purposes, the sentencing court need only determine *either* that the defendant has demonstrated that there was no waiver in fact *or* that the state court did not cause a procedural record to be made demonstrating a knowing and voluntary waiver. Expressing the same point another way, and taking account of the burden on the defendant, one may say that to use the prior conviction, the sentencing court must conclude not only that the defendant has not demonstrated that there was no waiver in fact (*i.e.,* no knowing and voluntary waiver of rights) but also that the defendant has not demonstrated that the state court did not cause a procedural record to be made showing that a knowing and voluntary waiver occurred.

*Parke* adds, however, that if a transcript is unavailable when the state court conviction is collaterally attacked (in the later recidivism proceeding in *Parke,* and here, in the federal sentencing context), the *Parke* presumption-of-regularity rule precludes a presumption that the court did not advise defendant of his rights and ensure that those rights were voluntarily waived; *i.e.,* there is no presumption that the state court never, at any point, created a record establishing the knowing and voluntary waiver of constitutional rights. Indeed, the Court observed that

> [t]his is not a case in which an extant transcript is suspiciously "silent" on the question whether the defendant waived

constitutional rights. Evidently, no transcripts or other records of the earlier plea colloquies exist at all.... On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights.

— U.S. at —— – ——, 113 S.Ct. at 523–24. Under this waiver-plus interpretation of *Parke,* the conclusion one may draw is that if the transcript is available and "silent," the past conviction does not pass constitutional muster under *Boykin* and must not be used in a recidivism proceeding.

If *Parke* is interpreted in this way, defendant's constitutional challenge to a past conviction succeeds if defendant demonstrates *either* (1) that defendant did not, in fact, knowingly and voluntarily waive his constitutional rights, *or* (2) that the state court did not comply with *Boykin* by advising defendant of his rights and ensuring that the waiver of those rights was knowing and voluntary. Thus, if a transcript (or other evidence where the transcript is not available) demonstrates that the proceedings did not comply with *Boykin,* then the convictions would be invalid for use in sentencing under section 924(e) whether or not the sentencing court determines that defendant's waiver was *actually* knowing and voluntary.

### b. Waiver-only requirement.

A second possible interpretation of *Parke* is that the *Boykin* presumption of invalidity does not apply at all for a collateral attack on a past conviction during a recidivism proceeding. In this event, the inquiry concerns *only* whether the defendant was *actually* aware of the constitutional rights he waived and that his waiver was voluntary—regardless of whether or not the state trial court took any steps to inform defendant of his rights and make sure that those rights were voluntarily waived. This interpretation of *Parke* is advanced by the government.

### c. The choice between waiver-plus and waiver-only interpretations.

■ Some of the Court's language in *Parke,* quoted above, suggests the waiver-

plus interpretation. Some caution is appropriate, however, before adopting this interpretation. In *Parke,* the Court was not faced with a case where the Court determined that the state court did not comply with the procedural requirements of *Boykin.* Consequently, the Court did not squarely address whether this sort of compliance with *Boykin* is necessary for use of a previous conviction in a recidivism determination. Thus, I conclude that *Parke* should not be interpreted as adopting a rule that unless the current sentencing court determines that this waiver-plus requirement is satisfied, the conviction is invalid.

Moreover, other parts of the Opinion for the Court weigh against a waiver-plus requirement. In *Parke,* the Supreme Court also held that, in the absence of a transcript, an inference of a knowing and voluntary waiver of rights in a plea proceeding is permissible based on the determination that defendant had been informed of his rights two years earlier in a different plea proceeding. —— U.S. at ——, 113 S.Ct. at 527. (This inference was necessary to the outcome of the case because, under the state scheme, the government had the burden to establish the constitutionality of a past conviction once a defendant produced evidence of unconstitutionality. *See id.* —— U.S. at ——, ——, 113 S.Ct. at 520, 527.) If informing a defendant of his rights in one proceeding satisfies *Boykin*'s requirements in a proceeding two years later (for purposes of collateral review under a recidivism determination), then the inquiry is not focused solely on the procedures followed in taking the later plea (since there was no finding on this issue). Rather, the Supreme Court allowed an inference that the defendant *actually* understood the rights he was waiving in spite of the possible failure of the state trial court to comply with *Boykin* in the later proceeding.

*See also North Carolina v. Alford,* 400 U.S. 25, 29 & n. 3, 91 S.Ct. 160, 163 & n. 3, 27 L.Ed.2d 162 (1970) (acknowledgement during taking of plea that counsel informed defendant of rights, followed by post-conviction confirmation that counsel had informed defendant of rights, would not raise "issues of substance" under *Boykin* ).

A number of other Circuits apparently have required a showing that the waiver of constitutional rights was not *actually* voluntary and intelligent in order to invalidate a conviction for consideration under section 924(e)—*i.e.,* have adopted an inquiry more analogous to the waiver-only interpretation of *Parke.*

*See United States v. Custis,* 988 F.2d 1355, 1363 (4th Cir.1993) ("In order to rebut [the] strong presumption of validity, the defendant must make a factual showing that his plea of guilt was not voluntary and intelligent"; holding that sentencing court did not err in refusing to consider constitutional challenge under *Boykin* to validity of guilty plea, used for enhancement under section 924(e), because prejudice from inadequate plea procedures cannot be presumed on collateral review);[1] *United States v. Stewart,* 977 F.2d 81, 84–85 (3d Cir.1992) (based in part on *Boykin* colloquy six weeks before challenged guilty plea, "we are confident the defendant's plea was knowing and voluntary in any realistic sense. Defendant did not demonstrate actual lack of knowledge...."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1433, 122 L.Ed.2d 800 (1993); *United States v. Gallman,* 907 F.2d 639, 643–44 & n. 6 (7th Cir.1990) (for use under section 924(e) of conviction obtained before *Boykin,* "[t]he lack of explicit proof that [defendant] was aware of his constitutional rights does not prove that he was unaware of those rights. The burden is on [defendant] to produce evidence *showing* that his earlier conviction was unconstitutional"; although transcript of plea proceeding was available and "reveal[ed] no discussion of a waiver of specific constitutional rights," defendant may have been given additional information by his attorney or in a pre-trial proceeding) (original emphasis), *cert. de-*

1. Under *Custis,* the Fourth Circuit apparently would not permit the type of inquiry addressed in this opinion. Although *Paleo* left open the "kinds of constitutional infirmities that make a past conviction unusable," 967 F.2d at 13, the

constitutional infirmity asserted in *Paleo* involved an apparent failure to comply with *Boykin.* Accordingly, I conclude that the First Circuit permits a defendant to raise this type of constitutional challenge. *See id.* at 12.

*nied,* —— U.S. ——, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991). *Cf. Adams v. Peterson,* 968 F.2d 835, 845 (9th Cir.1992) (en banc) (on habeas review of state conviction, noting in *dicta* that *Boykin* was satisfied by state court *post*-conviction finding that defendant acted voluntarily and intelligently in waiving his *Boykin* rights); *Pitts v. United States,* 763 F.2d 197, 200 (6th Cir. 1985) (on habeas review, "that *Boykin* was not fully complied with, however, does not end the inquiry. The ultimate question which remains is whether [petitioner's] plea was in fact voluntary and intelligent."); *Nelson v. Callahan,* 721 F.2d 397, 399 (1st Cir.1983) (affirming denial of writ of habeas corpus on plea of guilt to murder charge, obtained in state court before *Boykin* was decided; although the "trial judge did not inquire into the voluntariness of the guilty pleas when he accepted them, nor did he explain to [petitioner] which rights he was giving up," defense counsel had explained petitioner's rights to him before the plea and defendant failed to prove that his plea was not voluntary). *See also Hines,* 802 F.Supp. at 563–64, 573–75 (D.Mass.1992) (admission to sufficient facts valid without full colloquy for purposes of sentencing enhancement under section 924(e); observing that defendant did not claim admission was not actually knowing and voluntary; and finding that the constitutional challenges were waived anyway).

In the habeas corpus context, the Supreme Court has also permitted an inference that defense counsel (and not the court on the record) informed defendant of the nature of the charges to which the defendant pleaded.

*See Marshall v. Lonberger,* 459 U.S. 422, 437, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983) ("Under *Henderson,* respondent must be presumed to have been informed, either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted [and to which he pleaded]."); *Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258 ("it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the ac-

cused notice of what he is being asked to admit").

In some cases, courts inquire into the form of the state court proceedings by examining, for example, the custom and practice of the state court in following procedures to ensure a knowing and voluntary waiver of constitutional rights.

*See, e.g., United States v. Ferguson,* 935 F.2d 862, 867 (7th Cir.1991) ("A guilty plea and the resulting conviction will be constitutionally sound if the defendant's awareness of his rights can be reasonably inferred from the custom and practice of the court."), *cert. denied,* —— U.S. ——, 112 S.Ct. 907, 116 L.Ed.2d 807 (1992).

These cases, however, may be regarded as consistent with the waiver-only interpretation of *Parke.* If the state court normally follows procedures to ensure a knowing and voluntary waiver of rights, the sentencing court may infer not only that the state court followed those procedures in securing the past conviction (satisfying the requirement of the waiver-plus interpretation) but *also,* because the procedures were sufficient, that the waiver was in fact knowing and voluntary. In other words, an inquiry into the court proceedings would be one of a number of alternatives for proving that a waiver was actually knowing and voluntary.

### C. Defendant's past convictions.

Each of defendant's convictions was in a Massachusetts court. To understand defendant's specific challenges, one must be aware of basic characteristics of the Massachusetts court system. That system has been described in detail elsewhere. *See, e.g., Commonwealth v. Duquette,* 386 Mass. 834, 438 N.E.2d 334 (1982); *Hines,* 802 F.Supp. at 561–64. The summary presented here is limited to a brief outline of those features of the system that are relevant to the instant case.

The Massachusetts courts are structured in two tiers. A defendant has a right "in the first instance" to be tried in the jury tier. If the defendant waives this right, the first-instance trial is before a judge. In this event, the defendant retains the right to appeal to the jury tier for trial *de novo* if

unsatisfied with the results of trial (or admission) before the judge.

This procedure is complicated by customary practices in the bench trial tier. At the bench trial, the defendant may (1) have a full-blown bench trial, (2) plead guilty, (3) plead *nolo contendere,* or (4) admit to sufficient facts. *See* Mass.R.Crim.P. 12(a).

As to admitting sufficient facts, the defendant "may, after a plea of not guilty, admit to sufficient facts to warrant a finding of guilty." Mass.R.Crim.P. 12(a)(3). After an admission, the judge may (but also may not) find the defendant guilty and sentence him. After trial or admission to sufficient facts, the defendant retains the right to appeal to the next tier and secure a trial *de novo* before a jury.

*1. The 1985 conviction.*

On January 18, 1985, defendant was charged with "assault and battery on the body of Heavenly Mitchell in the head and upper body with a dangerous weapon to wit: a shod foot...." (Docket No. 110, Exh. A.) According to the papers, defendant was arraigned on that day, appeared before Judge King with the assistance of counsel (attorney Leon Drysdale), and executed a statement that

> I ... have been given notice of my right to have a jury trial in the first instance. I understand this notice. I hereby waive my right to a jury trial in the first instance on the complaint(s) specified above.

(Buckley Aff., ¶ 7 & Exh. A.) Defendant was 20 years old at the time of his arraignment. Defendant does not contest that he signed this notice nor does he proffer any showing that, in fact, he did not understand his right to a first-instance jury trial.

On March 1, 1985, defendant appeared before Judge King and admitted to sufficient facts. He was found guilty and was sentenced to one year in a House of Correction, suspended for one year, and court costs and restitution. Defendant did not exercise his right to appeal to the jury tier.

Defendant challenges the constitutionality of this conviction on the ground that the judge did not determine that the waiver of

defendant's right to appeal to the jury tier was knowing and voluntary. No transcript of the proceeding is available.

**a. Knowing and voluntary waiver.**

Defendant presents no evidence that he was actually unaware of his constitutional rights or that he did not voluntarily waive them when he admitted to sufficient facts and waived an appeal to the jury tier. Defendant's affidavit specifies only that

> [a]s I recall, in neither [the 1985 or 1987 convictions] was there a trial; I did not contest the charges against me. In neither case do I recall the judge questioning me about whether my not choosing to appeal to the jury of six was voluntary nor did the judge explain to me any rights I was giving up by not appealing.

(Docket No. 107, Exh. E. ¶ 4.) Defendant's failure to aver lack of knowledge or understanding is significant. I find that defendant has not produced sufficient evidence to persuade me as factfinder that any waiver of rights during the proceedings was not, in fact, voluntary or that defendant was unaware of the rights he was waiving.

If the waiver-only interpretation of *Parke* applies, the inquiry ends here. Nevertheless, I now examine the proceedings to determine whether defendant has demonstrated that the state court proceedings did not comply with *Boykin*—to determine whether adopting the waiver-plus interpretation would yield a different result.

**b. Procedural compliance with *Boykin*.**

In support of the contention that the state court failed to comply with the procedural requirements of *Boykin,* defendant offers his own affidavit, quoted above, stating that he cannot recall a colloquy. I do not find this persuasive. First, defendant's failure to recall details of a court proceeding that occurred over seven years ago is not surprising, whether or not a colloquy took place. Second, defendant's affidavit is so cursory that it does not demonstrate any memory of the earlier proceedings.

The remainder of the parties' evidence is generic to the Massachusetts court systems.

Defendant argues that the court should infer from the alleged widespread violation of *Boykin* in the state court system that *his* rights were violated during his admission to sufficient facts proceeding.

In support of his contention that the Massachusetts courts do not routinely engage in *Boykin* colloquies, defendant offers two affidavits from defense attorneys. I find that each of these attorneys is familiar with the practice of Judge King when presiding over admissions to sufficient facts, at the time of a defendant's admission. According to the affidavits, judges in the Commonwealth of Massachusetts, and particularly Judge King in 1985, did not engage in any discussion of constitutional rights with a defendant admitting to sufficient facts or waiving a right to appeal.

The government counters with the affidavit of the Assistant Clerk–Magistrate that served as the session clerk during defendant's plea. (Buckley Aff., ¶ 3.) Buckley avers that he has no memory of the proceedings, but that "Judge King's practice regarding a colloquy with a defendant varied from occasion to occasion." (Buckley Aff., ¶ 9.)

Based on the evidence now before me, I would probably find that the state court did not properly develop a record demonstrating that defendant voluntarily and intelligently waived his *Boykin* rights. For the following reasons, however, I conclude that the 1985 conviction is properly before the court for sentencing under the ACCA whether or not the judge engaged defendant in a *Boykin* colloquy.

First, there is substantial doubt that the *Boykin* requirement of developing a record demonstrating a voluntary and intelligent waiver fully applies to defendant's admission to sufficient facts and waiver of appeal to the jury tier.

Even if a defendant is entitled to a colloquy under Massachusetts case law at the time of or after an admission and waiver of appeal,

e.g. *Commonwealth v. Duquette*, 386 Mass. 834, 438 N.E.2d 334 (1982) (conviction reversed on direct appeal), *Commonwealth v. Mele*, 20 Mass.App.Ct. 958, 480 N.E.2d 647

(1985) (allowing motion for new trial that was filed one year after conviction),

it is by no means clear that this right derives from the *federal* Constitution.

Cf. *Ciummei v. Commonwealth*, 378 Mass. 504, 506–09, 392 N.E.2d 1186, 1188–89 (1979) (requiring colloquy for jury waiver, but explicitly not basing the decision on federal constitutional requirements); *In Re Costarelli*, 378 Mass. 516, 392 N.E.2d 1193 (1979) (applying *Ciummei* to waiver of right to appeal for a *de novo* jury trial).

*Paleo* authorizes attacks based only on the federal Constitution. Even in direct review of a criminal conviction in federal court, the First Circuit has not required a specific *Boykin* colloquy when a defendant stipulates as to what the evidence will be at trial, and no other evidence is presented.

See *Bonilla–Romero v. United States*, 933 F.2d 86, 88–89 (1st Cir.1991). *Compare with United States v. Lyons*, 898 F.2d 210, 215 (1st Cir.1990) (Fed.R.Crim.P. 11 colloquy not required when defendant stipulates *to truth* of facts, but the judge must take "special pains" to make sure that the stipulation is voluntary and made with knowledge of the consequences), *cert. denied*, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990).

Rather, in *Bonilla–Romero*, the First Circuit held that a district court may rely on "other extrinsic factors" (rather than an "extended colloquy" on the record) in determining that an agreement as to what the evidence would be was knowing and voluntary. Although *Bonilla–Romero* involved direct review of a conviction in federal court, a similar rule has been applied in habeas review of a state court conviction. See *Adams*, 968 F.2d at 842 (9th Cir.1992) (en banc). Accordingly, I conclude that defendant has not demonstrated that the nature of these proceedings required a specific *Boykin* colloquy under the federal Constitution. See also *Hines*, 802 F.Supp. at 563–64.

Defendant argues that some Massachusetts courts have recently vacated convictions due to failure to engage in colloquies after an admission to sufficient facts or waiver of appeal. (Copies of these decisions were at-

tached, Docket No. 107, Exh. I, J.) These cases are readily distinguished because (1) they do not involve collateral attacks on a past conviction used for sentencing under the federal statute, 18 U.S.C. § 924(e), (2) they do not involve federal court review of a state court conviction, and (3) defendant did not have the burden to prove unconstitutionality, and the court in each of these cases merely found that the Commonwealth failed to carry its burden to prove a knowing and voluntary waiver of rights.

The second reason I conclude that the 1985 conviction is properly considered under the ACCA, whether or not the state court engaged in a specific *Boykin* colloquy, is the lack of any claim or evidence of prejudice. Specifically, there is no suggestion in this case: (1) that defendant's plea was not, in fact, knowing and voluntary; (2) that defendant would have acted any differently if the judge had followed a different procedure; or (3) that defendant was not, in fact, guilty. In these circumstances, I conclude that any failure to follow a specific *Boykin* colloquy in the state court would not make the conviction so unfair or unreliable that it should not be considered for sentencing under the ACCA.

> *Cf. Nelson,* 721 F.2d at 399–400 (on habeas review of pre-*Boykin* case, record does not show voluntariness of plea, but defendant must prove involuntariness; rejecting claim of involuntariness based on defendant's misunderstanding of possible sentence because misunderstanding did not "materially affect" plea).

Third, defendant never challenged his conviction by direct or collateral attack, even though he was represented by counsel during the proceedings and the legal and factual bases for challenging the conviction were known to defendant and counsel at the time of the conviction. The term for the suspended sentence expired long ago, without defendant's serving any time. In these circumstances, and without any suggestion of prejudice resulting from the alleged constitutional violation, I conclude that defendant is now precluded from asserting constitutional objections to compliance with the procedural requirements of *Boykin. See Hines,* 802 F.Supp. at 574.

Fourth, the Supreme Court and a number of Circuit Courts have permitted a finding of an intelligent and voluntary plea based on information the defendant received in an earlier proceeding, or from defense counsel. *See* cases cited in Section II.B.2.b. In sentencing under section 924(e), defendant has the burden of demonstrating that his conviction was unconstitutional. Defendant presents no evidence that he was not informed by counsel (or by some other means) of his constitutional rights. Accordingly, I conclude that defendant has not carried his burden to demonstrate that the conviction was unconstitutionally obtained.

Finally, I observe that the ruling requested by defendant, if approved on appeal, would have sweeping precedential effect. Even if the requested findings that (1) the state courts routinely violate *Boykin,* and therefore, (2) defendant's rights were violated during the proceedings for this previous conviction, should be viewed as determinations of adjudicative fact (an issue I need not and do not address in this case), nevertheless, a finding that all Massachusetts court convictions are, more likely than not, unconstitutional would have a potential impact on a great number of cases. Such a finding, if adopted by other courts, would have consequences analogous to a presumption of unconstitutionality for all convictions obtained in Massachusetts courts after an admission to sufficient facts. The bulk of past convictions, each representing a final judgment entitled to a "presumption of regularity," *see Parke,* —— U.S. at ——, 113 S.Ct. at 523, could be left unusable for sentencing determinations under section 924(e). The practical impact would be to undermine a well-established presumption of validity that must be accorded to final judgments of another court. *See id.* (applying presumption in recidivism proceeding); *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938); *Voorhees v. Jackson,* 35 U.S. (10 Pet.) 449, 472, 9 L.Ed. 490 (1836), *as cited in, Parke,* —— U.S. at ——, 113 S.Ct. at 523.

### 2. *The 1987 conviction.*

#### a. **The state court proceedings.**

▇ For this case, the court papers reflect that a criminal complaint issued on June 11,

1987, charging Frederick Hardy with assault and battery. According to the application for complaint, defendant was charged with

On 5–31–87 about 2:45 A.M. Heavenly Ray Mitchell and her sister Leila Ray were both assaulted about the head and face by Frederick Hardy, while at 2 Brandon Ave.

(Buckley Aff., Exh. C.) At the arraignment, Peter Leveroni was appointed as counsel for defendant. Defendant signed a waiver specifying that

I ... have been informed of my right to have a jury trial in the first instance. I understand this notice. I hereby waive my right to a jury trial in the first instance on the complaint(s) specified above.

I understand that after this waiver, I may immediately appeal for a new trial before a jury if I am found guilty either after a trial or upon admission to sufficient facts to warrant a finding of guilty. I also understand that if I plead guilty, I will not have any right to a new trial.

(*Id.*) Defendant does not contest that he signed this form nor does he contend that he did not understand what he was signing.

There is some confusion as to what happened after this point. No transcript is available for any of these proceedings. Defendant contends that he admitted to sufficient facts and that he cannot remember the judge engaging in a specific colloquy with him regarding the voluntariness of his waiving his right to appeal. (The only evidence to this effect is the paragraph of defendant's affidavit, quoted in section 1, *supra.*) Defendant also offers the affidavit of Peter Leveroni. (Docket No. 107, Exh. F.) Leveroni represented Hardy during the proceedings leading up to the 1987 conviction. According to Leveroni, "the case involved a substantial negotiation between me ... and the District Attorney's Office, resulting in Mr. Hardy's admission to a finding of sufficient facts." (*Id.* at ¶ 3.) Leveroni avers that it was not the practice of the Dorchester District Court to inquire into the voluntariness of an admission, nor to inquire into the voluntariness of a waiver of the right to appeal. Leveroni also avers that no colloquy occurred in the 1987 proceedings.

The government contends, however, that defendant was found guilty after a bench trial and that after sentencing defendant waived his right to appeal. The government presents the court papers indicating that defendant pleaded "not guilty" and that the entry where the form would indicate an admission to sufficient facts was left blank (indicating that there was no admission). (Buckley Aff. ¶ 16, Exh. C.)

In addition, the government presents the notes of a probation officer who attended a trial. (Buckley Aff. ¶ 17, Exh. D.). The notes discuss charges against two defendants, Frederick Hardy and Jeffrey Hardy. According to the notes, Leveroni represented both defendants. The notes do not document an admission to sufficient facts for either defendant. Rather, the notes excerpt the testimony of four civilian witnesses and record the outcome (each defendant found guilty of both charges). The government also presents the affidavit of Daniel Campbell. According to Campbell's affidavit, Heavenly Mitchell informed him that she remembered testifying and being asked questions by "Mr. Hardy's lawyer." (Campbell Aff., ¶ 2.)

With respect to the practice of the district court, the government offers the affidavit of Buckley. Buckley avers that the practice of engaging in a colloquy after admission to sufficient facts varied from judge to judge, and there was no set practice. According to Buckley, the clerk "always informed" defendant of a right to appeal and afforded the defendant an opportunity to confer with counsel.

Based on the materials before me, I find that a trial did take place in connection with an assault and battery on Heavenly Mitchell and on Leila Ray. There is some uncertainty about whether this trial included defendant Frederick Hardy, or whether he admitted to sufficient facts and Jeffrey Hardy exercised his right to a trial. In either case, I find both defendant's and Leveroni's affidavits unreliable because they both omit substantial and important details concerning the state court proceedings.

### b. Voluntary and knowing waiver.

For the 1987 conviction, as for the 1985 conviction, defendant presents no evidence that his waiver of any constitutional rights was not knowing and voluntary. Moreover, defendant was represented by counsel and familiar with the court system. I find that defendant has failed to demonstrate that any waiver of constitutional rights was not, in fact, knowing and voluntary.

### c. Procedural compliance with *Boykin.*

For the reasons stated in Section II.C.1.b., *supra,* I conclude that the 1987 conviction is properly before the court for sentencing under the ACCA, whether or not the judge engaged defendant in a specific colloquy concerning his right to appeal at the time that defendant waived this right.

In addition, the record discloses a signed statement that defendant had been advised of, and understood his right to, appeal to the jury tier if convicted after a bench trial. Even if I were to find in defendant's favor that no colloquy took place at the specific point in the proceedings when defendant waived his right to appeal, I still could not find by a preponderance of the evidence that the state court failed to comply with *Boykin. Boykin* does not require that a court mechanically step through a colloquy script at specific points and in a fixed sequence during the proceeding. Rather, the record as a whole may be reviewed to determine whether the waiver was voluntary and intelligent. *See Stewart,* 977 F.2d at 84–85 (3d Cir.1992) (citing cases from the Fifth, Seventh, Ninth, and Eleventh Circuits); *United States v. Young,* 979 F.2d 1280, 1281–82 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1604, 123 L.Ed.2d 166 (1993). I conclude that defendant has not demonstrated that the signed form indicating that defendant understood his right to appeal, accompanied by the fact that defendant was represented by counsel and any discussion that might have taken place between the court and defendant or defense counsel on the record, were not sufficient for the state district court judge to infer that defendant was knowingly and voluntarily waiving his right to appeal.

### 3. The 1989 conviction.

According to the court papers, a criminal complaint issued on April 14, 1988, charging Frederick Hardy with assault and battery on a police officer and disorderly conduct. (Campbell Aff., Exh. A.) On July 19, 1988, represented by Attorney Drysdale, defendant went to trial before Judge Tracy in the bench tier. Judge Tracy found defendant guilty and sentenced him to six months in a House of Corrections. Defendant exercised his right to appeal to the jury session.

At the jury session, defendant was represented by Attorney Kenneth D'Arcy. A tape of this proceeding was filed with the court. Although he was in the jury session, defendant waived his right to a jury trial and elected to proceed with a second bench trial. The court entered into an extended colloquy with defendant to ensure that his waiver of a jury trial was knowing and voluntary. Defendant does not contest the sufficiency of this colloquy.

The court then asked the Commonwealth if there would be any witnesses. The Commonwealth responded that it would read the statement of a police officer, if there was no objection. Defense counsel explicitly stated that there was no objection. The Commonwealth read the statement. The court then asked for a sentencing recommendation. The Commonwealth recommended one year of incarceration, with the sentence suspended for two years. Defense counsel represented that this was an agreed recommendation and argued that defendant now realized that he may have "overreacted" when he assaulted the police officer. The court then found defendant guilty of both counts and adopted the joint sentencing recommendation. The court did not engage in a colloquy with defendant concerning this mode of procedure or waiver of any constitutional rights other than the right to a jury trial.

Defendant contends that this conviction was unconstitutional because the proceeding was equivalent to taking a guilty plea and the court did not enter into a colloquy with defendant concerning his constitutional right against self-incrimination. (Def's Sentencing Mem. at 8.)

Even on direct review of federal convictions, a defendant who admits to facts sufficient to support a conviction is not entitled to the full *Boykin* colloquy detailed in Fed. R.Crim.P. 11. *See Bonilla–Romero,* 933 F.2d at 88–89 (1st Cir.1991). *Cf. Adams,* 968 F.2d at 842. When stating his waiver of the right to a jury trial, defendant suggested that he had conferred with counsel. He also demonstrated an awareness of his rights in the colloquy in which he waived his right to a jury trial. *See Bonilla–Romero,* 933 F.2d at 89 (defendant demonstrated that he was "well-informed" during colloquy concerning waiver of jury trial). Moreover, defendant was quite experienced with the Massachusetts state criminal system, and had already gone through a bench trial for this case. In these circumstances, I cannot find that the state court proceedings violated any federal constitutional right or that defendant did not knowingly and voluntarily waive any federal constitutional right.

Defendant's reliance on *Commonwealth v. Lewis,* 399 Mass. 761, 506 N.E.2d 891 (1987), is misplaced for two reasons. First, as noted above, *Paleo* authorizes attacks based only on the federal Constitution, and waiver of federal rights is a matter of federal law. Accordingly, First Circuit law deciding federal constitutional issues is binding on this court. Second, *Lewis* involved direct review of the conviction, not collateral review. *Boykin,* if applied at all on collateral review, is not applied in the same way. *See Parke,* discussed *supra.*

#### 4. The 1991 conviction.

■ According to the court records, a criminal complaint issued on November 15, 1990, charging defendant with possession of a class A substance with intent to distribute, possession of a class B substance with intent to distribute, and conspiracy to violate controlled substances law. (Campbell Aff., Exh. C.) Defendant was arraigned on that day and signed a form waiving his right to a first-instance jury trial. (*Id.*) This form is identical to the one quoted in section 2, *supra,* reciting defendant's right to appeal for a *de novo* jury trial if found guilty after bench trial or admission to sufficient facts.

On February 26, 1991, a bench trial was held. Defendant was found guilty of all three charges. Defendant contends that this conviction was unconstitutional because the court did not engage him in a colloquy at the time he waived his right to appeal for a *de novo* jury trial. Rather, the court asked him if there was appeal, and defendant immediately responded: "No."

In light of defendant's signed statement that he understood his right to appeal, and his familiarity with the Massachusetts court system (in fact, he exercised his right to appeal to the jury session during the 1989 proceedings), I cannot say that the state court proceedings failed to comply with *Boykin,* or that defendant did not knowingly and voluntarily waive any federal constitutional right.

### III. Qualification of the 1987 Conviction as a "Violent Felony."

■ Assault and battery under Massachusetts law, Mass. G.L. ch. 265, § 13A, encompasses two types of crime. One is a violent felony under section 924(e) (*i.e.,* physically harmful or potentially physically harmful). The other is not (*i.e.,* merely a nonconsensual touching). *See United States v. Harris,* 964 F.2d 1234, 1236–37 (1st Cir.1992). Defendant contends that the 1987 conviction cannot be used under section 924(e) because the court papers do not indicate the type of assault and battery as to which defendant admitted sufficient facts for a finding of guilty.

(The header to this section of defendant's brief refers to "Conviction No. 1" (the 1985 conviction), and later refers to assault and battery on a police officer (the 1989 conviction). Docket No. 107 at 8–9. The discussion in defendant's brief, however, focuses on the circumstances of the 1987 conviction and also refers to "case no. 2." Since defendant presents no specific argument concerning past convictions other than the 1987 conviction, I assume defendant challenges only the 1987 conviction on this ground.)

In *Taylor v. United States,* 495 U.S. 575, 598–99, 110 S.Ct. 2143, 2158–59, 109 L.Ed.2d 607 (1990), the Supreme Court held that a conviction for burglary may be used for sen-

tencing enhancement under section 924(e) only if the conviction satisfied the elements of a "generic" burglary, *i.e.*, "having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." To determine whether the past burglary conviction is of the violent felony variety, the Court held

> that an offense constitutes "burglary" for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to "generic" burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.

*Id.* at 602, 110 S.Ct. at 2160.

For the 1987 conviction, the criminal complaint charges that defendant "did assault and beat Heavenly Ray Mitchell," and "did assault and beat Leila Ray." (Buckley Aff., Exh. C.) The application for the criminal complaint specifies that the assaults were "about the head and face." (*Id.*) The state probation officer's court notes from the state district court trial indicate that Mitchell was struck in the head and passed out and that Ray saw defendant strangling Mitchell. The PSR indicates that Hardy "beat both women about the head and face," and that Mitchell said that she was hospitalized due to the assault and battery. PSR, ¶ 50. Defendant does not contest the accuracy of the presentence report or contend that the underlying assault and battery was, in fact, nonviolent.

Defendant contends, however, that the criminal complaint does not demonstrate a conviction for the violent type of assault and battery, and that, under *Taylor*, the court may not look past the criminal complaint to determine if the assault and battery was of the violent type.

In *Harris*, the First Circuit discussed this aspect of *Taylor*.

> [S]uppose the prior indictment simply used boilerplate language that could include either [a generically violent or nonviolent crime]. Also suppose, because the defendant pled guilty, no jury instructions exist to tell the federal sentencing court which of the crimes ... was charged. In such a case, we believe it would be appropriate

for the sentencing court to look to the conduct in respect to which the defendant was. charged and pled guilty, *not* because the court may properly be interested (in this context) in the violent or non-violent nature of that particular conduct, but because that conduct may indicate that the defendant and the government both believed that the generically violent crime ..., rather than the generically non-violent crime ... was at issue.

964 F.2d at 1236. In *Harris*, the court then concluded that, because the presentence report said that "the case file reflects" that the defendant was "armed with a knife" at the time of the assault, the sentencing court properly could infer that the charge was for the violent form of assault and battery. *Id.* at 1237.

Defendant contends that *Harris* must be interpreted as permitting review of the state court papers (*i.e.*, the "case file"), and nothing else, to determine whether a violent type of assault was charged. Defendant discounts the PSR in this case on the ground that it does not explicitly rest on "the case file."

This reading of *Harris* is strained since (1) the First Circuit never explicitly stated a requirement that the information be in the case file, (2) the court permitted "the sentencing court to look to the conduct in respect to which defendant was charged and pled guilty," 964 F.2d at 1236, and (3) subsequent First Circuit cases have not focused on this aspect of *Harris:*

> *see Paleo*, 967 F.2d at 11 ("the sentencing court is to examine the indictment, jury instructions, or other relevant materials (including appropriate descriptions in the presentence report)"); *United States v. Payne*, 966 F.2d 4, 7 (1st Cir.1992) ("where a statute defines more than one crime, a sentencing court may look to sources other than 'the indictment or information and jury instructions' to determine which crime was in fact at issue. [*Harris*, 964 F.2d at 1236] (looking to information in presentence report where defendant had pleaded guilty to earlier crime)") (*dicta*).

■ Even if I were to require that the charge for a generically violent form of as-

sault and battery be reflected in the case file, defendant presents no authority barring consideration of probation court notes of that case or the application for criminal complaint. Either may be regarded as part of "the case file." *See* Buckley Aff., ¶ 5 (application for complaint is part of state court case file). Indeed, since the *Harris* court relied on the presentence report in the federal court rather than the actual state court case file, the *Harris* court ostensibly did not review the specific sources of information that the federal probation department used to report what "the [state court] case file reflects." From the information in the application for complaint in the state court, I infer that the assault was "about the head and face." I find that the state and defendant understood that the generically violent form of assault and battery was involved. Also, I infer from the state probation officer's court notes (independently of the application for criminal complaint) that defendant was charged with, and found guilty of, the generically violent form of assault and battery.

Finally, a sentencing court may refer to the sentence imposed to determine the nature of the crime charged. *Payne*, 966 F.2d at 7 (looking at sentence to determine statute under which defendant was charged). In the instant case, the state court ordered restitution. Independently of the above considerations, I infer from the order of restitution that defendant was charged with the generically harmful form of assault and battery.

### IV. Other Arguments.

On May 25, 1993, defendant filed a document raising, for the first time, arguments that (1) calculation of defendant's criminal history category, as called for under section 4B1.4(c)(2) of the Sentencing Guidelines, is irrational, and (2) requesting a downward departure for defendant on the ground that his criminal history is less serious than those of most defendants sentenced under the ACCA. I reject defendant's contentions for the following reasons.

First, I find that the arguments were not raised in a timely fashion. These arguments were neither raised in the original sentencing hearing nor in defendant's sentencing memorandum after I reopened sentencing. Defendant filed the objections only after the court issued a draft Memorandum and Order addressing all of the sentencing arguments that the parties had presented.

■ Second, I have examined defendant's arguments and find them to be without merit. I do not agree that it is necessarily "irrational" (or, more precisely, that the premises of the syllogism on which the distinction is based are unacceptable) to treat a defendant as having a more severe criminal history because of the nature of the offense he committed. It is not necessarily unreasonable or otherwise impermissible to conclude that a felon with a lesser criminal history, who is found guilty of possessing a sawed-off shot gun, has engaged in behavior similar to (for sentencing purposes) that of someone with a criminal record more serious in other respects. *Cf. Hines*, 802 F.Supp. at 573–74 (refusing to consider similar argument because it lacked support).

■ Also, I do not find any basis in the nature of defendant's past convictions to justify a downward departure in his sentence. In reaching this conclusion, I have proceeded through the steps prescribed by the First Circuit in *United States v. Rivera*, 994 F.2d 942 (1st Cir.1993). Defendant argues that a downward departure is appropriate because (1) defendant had never been sentenced to prison before the offense, (2) absent the career offender provisions of the Sentencing Guidelines, defendant's criminal history category is only a III, which defendant contends is "far from the most serious," (3) defendant has no robbery or burglary past convictions and two of his convictions involved domestic violence, and (4) co-defendant Raymond Moreno received only a 5-year sentence. The first factor cited by defendant is somewhat misleading; defendant has been sentenced to several terms of imprisonment, although he has never served any time in prison because his sentence was suspended or modified after appeal.

In any event, without deciding the issue, I assume in defendant's favor that a sentencing court is encouraged to depart downward if the defendant's criminal history category significantly over-represents the seriousness

of a defendant's past criminal conduct. *See* U.S.S.G. §§ 4A1.3, 4B1.4.

I conclude that defendant is not entitled to a downward departure because I reject defendant's contention that his criminal history category significantly over-represents his past criminal conduct. In reaching this conclusion, I have weighed the nature and timing of defendant's past convictions as well as the nature of the present offense (in particular, (1) that gun shots were fired although not necessarily by defendant, and (2) that defendant possessed a loaded sawed-off shotgun—the factor that required a criminal history category of VI, *see* U.S.S.G. § 4B1.4(c)(2)). In short, I conclude that this is not a "special, or unusual, case" justifying a downward departure.

### ORDER

For the foregoing reasons, it is hereby ORDERED:

The clerk will enter a separate final order as follows: "Defendant was sentenced on January 23, 1992, in substance, as follows:

*Count 1:* 262 months to be served, followed by a 60-month period of supervised release commencing upon release from incarceration. A $50.00 special assessment is imposed by the court.

*Count 2:* 120 months to be served, followed by a 60-month period of supervised release, and a special assessment of $50.00.

*Count 4:* 262 months to be served, followed by a 60-month period of supervised release, and a special assessment of $50.00.

The defendant shall be given credit for time served in federal custody from June 10, 1991 to the present date [January 23, 1992].

The periods in custody and on supervised release under Counts 2 and 4 are to be concurrent with each other and with the periods under Count 1. The sentence of January 23, 1992, is confirmed, without modification in any respect."

### FINAL ORDER

For the reasons stated in the Memorandum and Order of this date, it is hereby ORDERED:

Defendant was sentenced on January 23, 1992, in substance, as follows:

*Count 1:* 262 months to be served, followed by a 60-month period of supervised release commencing upon release from incarceration. A $50.00 special assessment is imposed by the court.

*Count 2:* 120 months to be served, followed by a 60-month period of supervised release, and a special assessment of $50.00.

*Count 4:* 262 months to be served, followed by a 60-month period of supervised release, and a special assessment of $50.00.

The defendant shall be given credit for time served in federal custody from June 10, 1991 to the present date [January 23, 1992].

The periods in custody and on supervised release under Counts 2 and 4 are to be concurrent with each other and with the periods under Count 1.

The sentence of January 23, 1992, is confirmed, without modification in any respect.